2002 ND 148

Frank ROSE, individually and on behalf of all others similarly situated, Plaintiff and Appellee,

v.

UNITED EQUITABLE INSURANCE COMPANY, United Equitable Life Insurance Company, Defendants,

and

Standard Life and Accident Insurance Company, Defendant and Appellant.

Frank Rose, individually and on behalf of all others similarly situated, Plaintiff and Appellee,

v.

United Equitable Insurance Company, Defendant and Appellant,

United Equitable Life Insurance Company, and Standard Life and Accident Insurance Company, Defendants.

Nos. 20020094, 20020095.

Supreme Court of North Dakota.

Sept. 3, 2002.

Monte L. Rogneby (argued) and H. Patrick Weir (on brief), Vogel Law Firm, Bismarck, ND, and Timothy Q. Purdon (appeared) and Thomas A. Dickson (on brief), Dickson & Purdon, Bismarck, ND, for plaintiff and appellee.

Michael F. Braun (argued), Schuyler Roche & Zwirner, Chicago, IL, and Lawrence A. Dopson (appeared), Zuger Kirmis & Smith, Bismarck, ND, for defendant and appellant United Equitable Insurance Company.

Stephen W. Plambeck (argued) and Daniel J. Crothers (appeared), Nilles, Hansen & Davies, Ltd., Fargo, ND, and Scott Daniel (on brief), Greer, Herz & Adams, L.L.P., Galveston, TX, for defendant and appellant Standard Life and Accident Insurance Company.

MARING, Justice.

[¶ 1] United Equitable Insurance Company ("United Equitable") and Standard Life and Accident Insurance Company ("Standard") appealed from an order certifying a class action under N.D.R.Civ.P. 23. We affirm, concluding the district court did not abuse its discretion in certifying the class action.

I

[¶ 2] In 1982, Frank Rose purchased a guaranteed renewable nursing home insurance policy from United Equitable. United Equitable Life Insurance Company ("United Life"), the parent company of United Equitable, sold identical nursing home policies in North Dakota. In 1986, Standard acquired all of the nursing home insurance policies which United Equitable and United Life had issued in North Dakota. After that date none of the three companies issued similar nursing home policies in North Dakota, a practice known as "closing the block" of business for those North Dakota policyholders.

[¶ 3] In 2000, Rose sued United Equitable, Standard, and United Life, on his own behalf and for others similarly situated, alleging constructive fraud, actual fraud, consumer fraud, false advertising, and negligent misrepresentation. Rose alleges the insurers knew at the time the policies were issued that they were improperly underwritten and defectively underpriced. Rose claims the insurers intentionally marketed the policies with knowledge that exorbitant increases in re-

newal premiums would be necessary in future years of the policies. Rose further claims the insurers misrepresented the reasons for the numerous premium increases, intending these increases to induce policyholders to drop their coverage, and never advised policyholders they had "closed the block" on the nursing home policies. Rose claims the combination of higher premiums and a shrinking pool of insureds to share increased costs of claims resulted in a "death spiral" or "selection spiral," with premiums increasing so dramatically that the remaining policyholders are unable to pay and are forced to relinquish their policies.[1]

[¶ 4] In November 2000, the district court granted the insurers' motion to dismiss the complaint, concluding Rose's claims were barred by the statute of limitations. Rose appealed, and we reversed and remanded for further proceedings. *Rose v. United Equitable Ins. Co.*, 2001 ND 154, 632 N.W.2d 429. On remand, the district court granted class certification, including within the class all policyholders who had purchased certain nursing home policies in North Dakota from the insurers. United Equitable and Standard have appealed,[2] alleging the district court abused its discretion in granting class certification.

## II

[¶ 5] An order certifying a class action under N.D.R.Civ.P. 23 is appealable. *Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.*, 2000 ND 15, ¶ 3, 605 N.W.2d 153 ("*Ritter I*"); *Werlinger v. Champion Healthcare Corp.*, 1999 ND 173, ¶ 6, 598 N.W.2d 820. The trial court has broad discretion in determining whether to certify a class action under N.D.R.Civ.P. 23. *Klagues v. Maintenance Eng'g*, 2002 ND 59, ¶ 6, 643 N.W.2d 45; *Ritter I*, at ¶ 4. The trial court's decision to certify a class action will not be overturned on appeal unless the court has abused its discretion. *Klagues*, at ¶ 6; *Ritter I*, at ¶ 4. A trial court abuses its discretion only when it acts in an unreasonable, arbitrary, or unconscionable manner, when its decision is not the product of a rational mental process leading to a reasoned decision, or when it misinterprets or misapplies the law. *Klagues*, at ¶ 6; *Ritter I*, at ¶ 4.

[¶ 6] We have traditionally construed N.D.R.Civ.P. 23 to provide an open and receptive attitude toward class actions. *Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.*, 2001 ND 56, ¶ 5, 623 N.W.2d 424 ("*Ritter II*"); *Ritter I*, 2000 ND 15, ¶ 3, 605 N.W.2d 153; *Werlinger*, 1999 ND 173, ¶ 7, 598 N.W.2d 820. In reviewing an order granting certification, we are guided by the broad and liberal public policy in favor of class actions in this state:

> Decisions as to whether class action status should be allowed seem to rest, more than many other judicial determinations, on judicial philosophy, rather than on precedent or statutory language. . . .

> We will interpret Rule 23 so as to provide an open and receptive attitude toward class actions.

> We believe that Rule 23 is a remedial rule which "continues to have as its objectives the efficient resolution of the claims or liabilities of many individuals in a single action, the elimination of repetitious litigation and possibly inconsistent adjudications involving common questions, related events, or requests for similar relief, and the establishment of

---

1. Rose's claims are set out in greater detail in *Rose v. United Equitable Ins. Co.*, 2001 ND 154, ¶¶ 3–4, 632 N.W.2d 429.

2. United Life is currently in receivership and has been dismissed from this action.

an effective procedure for those whose economic position is such that it is unrealistic to expect them to seek to vindicate their rights in separate lawsuits." Wright & Miller, Federal Practice and Procedure: Civil § 1754.

*Peterson v. Dougherty Dawkins, Inc.*, 1998 ND 159, ¶ 10, 583 N.W.2d 626 (quoting *Rogelstad v. Farmers Union Grain Terminal Ass'n*, 226 N.W.2d 370, 376 (N.D. 1975)).

[¶ 7] A trial court may certify a class action under N.D.R.Civ.P. 23 if the following four requirements are satisfied:

1. The class is so numerous or so constituted that joinder of all members, whether or not otherwise required or permitted, is impracticable;

2. There is a question of law or fact common to the class;

3. A class action should be permitted for the fair and efficient adjudication of the controversy; and

4. The representative parties fairly and adequately will protect the interests of the class.

*Klagues*, 2002 ND 59, ¶ 7, 643 N.W.2d 45; *see also Ritter II*, 2001 ND 56, ¶ 6, 623 N.W.2d 424; *Ritter I*, 2000 ND 15, ¶ 5, 605 N.W.2d 153; *Peterson*, 1998 ND 159, ¶ 11, 583 N.W.2d 626.

[¶ 8] There is no real dispute that factors (1) and (2) are satisfied in this case. The class consists of some 8,000 policyholders who purchased nursing home policies from the insurers in North Dakota, so joinder of all parties would be impracticable. The claims all relate to alleged fraudulent underwriting of the policies and fraudulent misrepresentations to policyholders in uniform written communications from the insurers. There are clearly questions of law and fact common to the class. The dispute in this case focuses upon factors (3) and (4): the insurers argue the

trial court abused its discretion in determining that a class action will provide a fair and efficient adjudication and in concluding that Rose can adequately represent the class.

### III

[¶ 9] Rule 23(c)(1), N.D.R.Civ. P., lists thirteen factors for the trial court to consider in determining whether a class action will provide a fair and efficient adjudication of the controversy. *Klagues*, 2002 ND 59, ¶ 8, 643 N.W.2d 45; *Ritter I*, 2000 ND 15, ¶ 10, 605 N.W.2d 153. The trial court must weigh the competing factors, and no one factor predominates over the others. *Klagues*, at ¶ 8; *Ritter I*, at ¶ 10. The court need not specifically address all thirteen factors. *Werlinger*, 1999 ND 173, ¶ 56, 598 N.W.2d 820; *Peterson*, 1998 ND 159, ¶ 14, 583 N.W.2d 626. As we noted in *Peterson*, at ¶ 15:

> In most cases some of the thirteen factors will weigh against certification and some will weigh in favor. It is for the trial court, employing its broad discretion, to weigh the competing factors and determine whether a class action will provide a fair and efficient adjudication of the controversy. Thus, even if Dougherty is correct in its assertion four of the factors weigh against certification, that does not preclude the court from certifying the class action if, in its opinion, those factors are outweighed by other factors supporting certification.

### A

[¶ 10] The insurers contend the trial court erred by "mechanically" determining that a majority of the thirteen factors favored class certification. The insurers argue that the court applied a purely mathematical calculation and did not understand that it could give some factors more weight than others:

Unfortunately, the court below misapplied this test and instead of weighing the various factors to determine whether on balance they favored or disfavored class certification, the court simply added up the number of factors that it concluded favored class certification and determined that more factors favored class certification than disfavored class certification. As a consequence, the court's Order simply notes "a majority of the thirteen factors weigh in favor of certification." In reaching this result, the court appears to have eliminated completely the essential judicial function of *weighing* the factors. Instead, the court applied an erroneous, mechanical, mathematical test of whether 7 or more of the 13 factors favor class certification. By so doing, the court determined that the class should be certified without consideration of the relative weight that any of the factors might have in this particular case. Indeed, it cannot be determined from the court's opinion whether the court gave all factors equal weight or even if the court understood that it could (and should if appropriate) weigh some factors more heavily than others.

[¶ 11] The insurers have read the trial court's remarks out of context and have misinterpreted its conclusion. Although the court stated a "majority" of the factors favor certification, there is no indication that the court simply tallied up which side had numerically more factors and declared a winner. A reading of the court's entire order clearly demonstrates the court was well aware of the appropriate standards for considering the thirteen factors and correctly applied those standards,

[¶ 12] Before addressing the thirteen factors, the court in its memorandum opinion and order first quoted the standards from our prior cases, acknowledging that in most cases some factors will weigh against certification and some in favor, and that the court must *weigh* the competing factors to determine whether a class action will provide a fair and efficient adjudication of the controversy. The court then thoroughly addressed each of the thirteen factors, covering twelve pages of its opinion, and determined that some weighed against certification, some weighed in favor, and some were inapplicable. In reaching its conclusion, the court did not provide a mathematical result of how many factors were for or against certification. Although the court's unfortunate choice of words indicated a "majority" of the factors weighed in favor of certification, a thorough reading of the court's opinion clearly shows the court was aware it was to weigh all of the factors, and was not required to give equal weight to each factor, in determining whether a class action would provide a fair and efficient adjudication. Applying that standard, the court concluded a class action would provide a fair and efficient adjudication in this case.

B

[¶ 13] One of the thirteen factors the court must consider is "whether common questions of law or fact predominate over any questions affecting only individual members." N.D.R.Civ.P. 23(c)(1)(E). The insurers contend the trial court erred in concluding common questions predominate over individual questions in this case.

[¶ 14] The trial court may conclude that common questions predominate even if there are significant individual questions to be resolved:

There is no precise test governing the determination of whether common questions predominate over individual claims. Rather, a pragmatic assessment of the entire action and all of the issues is involved in making the determination. For common questions to predominate,

it is not necessary the individual claims be carbon copies of each other. "Predominate" should not be automatically associated with "determinative" or "significant," and consequently when one or more central issues to the action are common and can be said to predominate, the class action will be proper. Class certification is not to be refused merely because individual issues will remain even after disposition of common issues. The common issues need not dispose of the case, and the presence of individual issues is of no obstacle to proceeding as a class action.

*Werlinger*, 1999 ND 173, ¶ 33, 598 N.W.2d 820 (citations omitted); *see also Klagues*, 2002 ND 59, ¶ 19, 643 N.W.2d 45; *Ritter I*, 2000 ND 15, ¶ 22, 605 N.W.2d 153; *Peterson*, 1998 ND 159, ¶¶ 21–22, 583 N.W.2d 626.

[¶ 15] The insurers argue there will be numerous individual issues remaining after the common issues have been determined. Our prior cases, however, make it clear class certification need not be refused on that basis alone. *See, e.g., Klagues*, 2002 ND 59, ¶ 19, 643 N.W.2d 45; *Werlinger*, 1999 ND 173, ¶ 33, 598 N.W.2d 820. Class certification is not automatically precluded by the existence of individual issues which will remain after the common questions of law and fact have been resolved.

[¶ 16] The insurers also contend that, for purposes of determining whether common issues predominate, this case is governed by *Saba v. County of Barnes*, 307 N.W.2d 590 (N.D.1981). In *Saba*, this Court concluded the trial court did not abuse its discretion in determining that individual questions predominated over common questions where complex individual questions of proximate cause and damages would remain after the common questions were resolved.

[¶ 17] The insurers' argument ignores the highly deferential standard of review we employ in reviewing a trial court's decision to certify a class action. This Court in *Saba* held only that the trial court had not abused its discretion in determining individual questions predominated over common ones. The Court did not hold that, as a matter of law, that result was required. A decision in which we affirmed a trial court's denial of certification on the abuse of discretion standard is readily distinguishable when the current appeal is from an order certifying a class action. *See Ritter I*, 2000 ND 15, ¶ 24, 605 N.W.2d 153. By definition, when a matter is left to the broad discretion of the trial court, it is envisioned there is a broad range of factual scenarios in which the trial court is left to make its choice, and whichever choice it makes will be upheld on appeal. This case presented many close questions and difficult choices, and it was for the trial court to make those choices without interference from this Court on appeal unless there has been an abuse of discretion.

[¶ 18] We also note that many of the insurers' alleged individual issues are at this point merely speculative, and will depend upon further development of the facts as the case progresses. The trial court has the authority to decertify, create subclasses, or modify the class if the case ultimately proves unmanageable in its present form:

Under N.D.R.Civ.P. 23(b), a trial court generally considers issues about certification of a class action "as soon as practicable after the commencement of a class action," and at that stage of the proceeding, issues regarding a joint or common interest may not be fully crystalized. A trial court may amend a certification order at any time before entry of judgment on the merits. N.D.R.Civ.P. 23(e). Under similar lan-

guage in Fed.R.Civ.P. 23(c)(1), federal trial courts are free to decertify, subclassify, or modify a class certification previously granted. In *Richardson [v. Byrd,* 709 F.2d 1016, 1019 (5th Cir. 1983)], the court aptly explained a federal trial court "must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts."

*Ritter II,* 2001 ND 56, ¶ 16, 623 N.W.2d 424 (citations omitted).

[¶ 19] We conclude the trial court did not abuse its discretion in determining common questions predominated over individual questions, and the court did not abuse its discretion in determining a class action will provide a fair and efficient adjudication of the controversy in this case.

## IV

[¶ 20] The insurers contend the trial court erred in concluding Rose could adequately represent the class.

[¶ 21] In order to certify a class action, the trial court must find that the representative party or parties "fairly and adequately will protect the interests of the class." N.D.R.Civ.P. 23(b)(2)(C); *see also Werlinger,* 1999 ND 173, ¶ 19, 598 N.W.2d 820. Rule 23(c)(2) sets the framework for the trial court's determination whether the class representative can fairly and adequately represent the class:

In determining under subdivision (b)(2) that the representative parties fairly and adequately will protect the interests of the class, the court must find that:

(A) the attorney for the representative parties will adequately represent the interests of the class;

(B) the representative parties do not have a conflict of interest in the maintenance of the class action; and

(C) the representative parties have or can acquire adequate financial resources, considering subdivision (q), to assure that the interests of the class will not be harmed.

The determination whether the party will fairly and adequately represent the interests of the class lies within the discretion of the trial court, and its decision will not be overturned on appeal absent an abuse of that discretion. *See Klagues,* 2002 ND 59, ¶ 26, 643 N.W.2d 45; *Werlinger,* at ¶¶ 23, 25.

[¶ 22] The trial court thoroughly addressed each of the three requirements under N.D.R.Civ.P. 23(c)(2) and concluded Rose's attorneys will adequately represent the interests of the class, Rose did not have any conflict of interest in representing the class, and Rose had or could acquire adequate financial resources to maintain the class action. We conclude the trial court did not abuse its discretion in determining that Rose can fairly and adequately represent the interests of the class.

## V

[¶ 23] We have considered the remaining issues raised by the parties, including the insurers' due process claim, and we conclude they are either unnecessary to our decision or are without merit. Parties mounting constitutional challenges should bring up the heavy artillery or forego the attack entirely. *State v. Clark,* 2001 ND 194, ¶ 9, 636 N.W.2d 660; *State v. Kensmoe,* 2001 ND 190, ¶ 19, 636 N.W.2d 183.

[¶ 24] We affirm the order certifying the class action.

[¶ 25] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., and WILLIAM F. HODNY, S.J., concur.

[¶ 26] The Honorable WILLIAM F. HODNY, S.J., sitting in place of KAPSNER, J., disqualified.