2003 ND 12

Henry H. HOWE and Michael Simonson, individually and on behalf of all others similarly situated, Plaintiffs and Appellees,

v.

MICROSOFT CORPORATION, Defendant and Appellant,

and

Does 1 through 100, inclusive, Defendants.

No. 20020075.

Supreme Court of North Dakota.

Jan. 28, 2003.

Vincent J. Esades (argued), Daniel E. Gustafson (on brief), and Jason Kilene (on brief), Heins Mills & Olson, PLC, Minneapolis, MN, and Robert J. Gralewski, Jr. (appeared), Dennis Stewart (on brief), and Leonard B. Simon (on brief), Milberg Weiss Bershad Hynes & Lerach, LLP, San Diego, for plaintiffs and appellees.

Patrick J. Ward (appeared), Zuger Kirmis & Smith, Bismarck, David B. Tulchin (argued) and Joseph E. Neuhaus (on brief), Sullivan & Cromwell, LLP, New York, NY, Thomas W. Burt (on brief), Richard Wallis (on brief), Steven J. Aeschbacher (on brief), Microsoft Corporation,

Redmond, WA, Charles B. Casper (on brief), Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, PA, and Steve W. Berman (on brief), Hagens Berman, Seattle, WA, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Microsoft Corporation has appealed from an order granting class certification in an action against Microsoft for violations of the North Dakota Antitrust Act and the Unfair Trade Practices Law. We affirm, concluding the district court did not abuse its discretion in certifying the class action.

I

[¶ 2] Microsoft manufactures, markets, and licenses computer software, including operating systems. Most of Microsoft's operating system software is distributed to personal computer ("PC") manufacturers, known in the industry as original equipment manufacturers ("OEMs"). OEMs incorporate the operating system software into PCs which pass through various chains of distribution and are eventually sold to end users. Some Microsoft operating system software is also sold in "shrink wrap" form, without being pre-loaded into a PC. Microsoft does not charge uniform prices for its operating system software; rather, the price varies widely among the first purchasers in the distribution chain.

[¶ 3] Henry Howe and Michael Simonson (collectively "Howe") are North Dakota residents who were indirect purchasers of Microsoft operating system software. They brought this action in March 2000, on behalf of themselves and others similarly situated, alleging Microsoft has established a monopoly in the marketplace for operating system software through anti-competitive acts and has maintained this monopoly for more than a decade. They further allege Microsoft has used its monopoly power to stifle innovation, reduce and eliminate competition, and overcharge consumers, in violation of the North Dakota Antitrust Act and the Unfair Trade Practices Law.

[¶ 4] Howe moved for class certification under N.D.R.Civ.P. 23. After considering the pleadings, the record, and the arguments and submissions of the parties, the trial court issued a written order certifying the following class:

All persons who acquired for their own use, and not for further selling, leasing or licensing, a license in North Dakota from Microsoft, an agent of Microsoft or an entity under Microsoft's control, for an Intel-compatible PC version of MS–DOS, Windows 95, upgrades to higher MS–DOS versions, upgrades to or of Windows 95, Windows 98, upgrades to or of Windows 98, or other software products in which MS–DOS or Windows have been incorporated in full or part ("Microsoft operating systems software") at any time during the class period.

The class period was established as May 18, 1994 and thereafter.

[¶ 5] Microsoft appealed from the written order granting class certification.

II

[¶ 6] An order certifying a class action under N.D.R.Civ.P. 23 is appealable. *Rose v. United Equitable Ins. Co.*, 2002 ND 148, ¶ 5, 651 N.W.2d 683; *Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.*, 2000 ND 15, ¶ 3, 605 N.W.2d 153 ("*Ritter I* "). We recently summarized our standard of review of such orders:

The trial court has broad discretion in determining whether to certify a class action under N.D.R.Civ.P. 23. The trial court's decision to certify a class action will not be overturned on appeal unless

the court has abused its discretion. A trial court abuses its discretion only when it acts in an unreasonable, arbitrary, or unconscionable manner, when its decision is not the product of a rational mental process leading to a reasoned decision, or when it misinterprets or misapplies the law.

*Rose,* at ¶ 5 (citations omitted).

[¶ 7] We have consistently construed N.D.R.Civ.P. 23 to provide an open and receptive attitude toward class actions. *Rose,* 2002 ND 148, ¶ 6, 651 N.W.2d 683; *Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.,* 2001 ND 56, ¶ 5, 623 N.W.2d 424 ("*Ritter II*"); *Ritter I,* 2000 ND 15, ¶ 3, 605 N.W.2d 153; *Werlinger v. Champion Healthcare Corp.,* 1999 ND 173, ¶ 6, 598 N.W.2d 820. In reviewing an order granting certification, we are guided by the broad and liberal public policy in favor of class actions in this state:

Decisions as to whether class action status should be allowed seem to rest, more than many other judicial determinations, on judicial philosophy, rather than on precedent or statutory language. . . .

We will interpret Rule 23 so as to provide an open and receptive attitude toward class actions.

We believe that Rule 23 is a remedial rule which "continues to have as its objectives the efficient resolution of the claims or liabilities of many individuals in a single action, the elimination of repetitious litigation and possibly inconsistent adjudications involving common questions, related events, or requests for similar relief, and the establishment of an effective procedure for those whose economic position is such that it is unrealistic to expect them to seek to vindicate their rights in separate lawsuits." 7A Wright & Miller, Federal Practice and Procedure: Civil § 1754.

*Peterson v. Dougherty Dawkins, Inc.,* 1998 ND 159, ¶ 10, 583 N.W.2d 626 (quoting *Rogelstad v. Farmers Union Grain Terminal Ass'n, Inc.,* 226 N.W.2d 370, 376 (N.D.1975)).

[¶ 8] Under N.D.R.Civ.P. 23, the trial court may certify a class action if the following four requirements are satisfied:

1. The class is so numerous or so constituted that joinder of all members, whether or not otherwise required or permitted, is impracticable;

2. There is a question of law or fact common to the class;

3. A class action should be permitted for the fair and efficient adjudication of the controversy; and

4. The representative parties fairly and adequately will protect the interests of the class.

*Rose,* 2002 ND 148, ¶ 7, 651 N.W.2d 683; *Klagues v. Maintenance Eng'g,* 2002 ND 59, ¶ 7, 643 N.W.2d 45. Microsoft has not challenged the trial court's determination that factors (1), (2), and (4) are satisfied in this case. The sole dispute on appeal focuses on whether a class action will provide a fair and efficient adjudication of the controversy in this case.

### III

[¶ 9] Rule 23(c)(1), N.D.R.Civ. P., lists thirteen factors to guide the trial court's determination whether a class action will provide a fair and efficient adjudication of the controversy. *Rose,* 2002 ND 148, ¶ 9, 651 N.W.2d 683; *Klagues,* 2002 ND 59, ¶ 8, 643 N.W.2d 45; *Ritter I,* 2000 ND 15, ¶ 10, 605 N.W.2d 153. The trial court must weigh the competing factors, and no one factor predominates over the others. *Rose,* at ¶ 9; *Klagues,* at ¶ 8; *Ritter I,* at ¶ 10. The court is not required to specifically address each of the thirteen factors. *Rose,* at ¶ 9; *Werlinger,* 1999 ND

173, ¶ 56, 598 N.W.2d 820; *Peterson,* 1998 ND 159, ¶ 14, 583 N.W.2d 626. We explained in *Peterson,* at ¶ 15:

In most cases some of the thirteen factors will weigh against certification and some will weigh in favor. It is for the trial court, employing its broad discretion, to weigh the competing factors and determine whether a class action will provide a fair and efficient adjudication of the controversy. Thus, even if Dougherty is correct in its assertion four of the factors weigh against certification, that does not preclude the court from certifying the class action if, in its opinion, those factors are outweighed by other factors supporting certification.

### A

[¶ 10] Microsoft's argument focuses on two of the thirteen factors: whether common questions of law and fact predominate over individual questions and whether management of the class action poses unusual difficulties. N.D.R.Civ.P. 23(c)(1)(E) and (K). Microsoft argues the trial court abused its discretion in concluding that common questions of law and fact predominate over individual issues and that there are no unusually difficult management problems.

[¶ 11] Microsoft contends that, in order to demonstrate liability under the Antitrust Act and the Unfair Trade Practices Act, Howe must prove: (1) that Microsoft violated the statute; (2) that the violation "impacted" each member of the class, causing injury to business or property; and (3) damages for each class member. Microsoft alleges that, unless Howe can establish the "impact" and "damage" elements by proof common to the entire class, a class action is barred. At oral argument, Microsoft's counsel argued that certification is prohibited unless Howe can show by common proof that any overcharge Microsoft made to direct purchasers "was passed on in a uniform method, and to the same exact extent, to members of the class."

[¶ 12] Neither Rule 23 nor our caselaw requires such a showing as a prerequisite to class certification. We have never suggested a class plaintiff must show there will be common proof on each element of the claim. Rather, we have repeatedly noted that the existence of individual issues is not necessarily fatal to class certification.

[¶ 13] We rejected markedly similar arguments in *Rose,* 2002 ND 148, 651 N.W.2d 683. In *Rose,* a class action against insurance companies for alleged fraud in the sale of nursing home policies, the insurers claimed certification was inappropriate because resolution of the common questions would leave unresolved significant individual questions of proximate cause and damages. We concluded the presence of such individual questions did not preclude class certification:

The trial court may conclude that common questions predominate even if there are significant individual questions to be resolved:

There is no precise test governing the determination of whether common questions predominate over individual claims. Rather, a pragmatic assessment of the entire action and all of the issues is involved in making the determination. For common questions to predominate, it is not necessary the individual claims be carbon copies of each other. "Predominate" should not be automatically associated with "determinative" or "significant," and consequently when one or more central issues to the action are common and can be said to predominate, the class action will be proper. Class certification is not to be refused merely

because individual issues will remain even after disposition of common issues. The common issues need not dispose of the case, and the presence of individual issues is of no obstacle to proceeding as a class action.

*Werlinger*, 1999 ND 173, ¶ 33, 598 N.W.2d 820 (citations omitted); *see also Klagues*, 2002 ND 59, ¶ 19, 643 N.W.2d 45; *Ritter I*, 2000 ND 15, ¶ 22, 605 N.W.2d 153; *Peterson*, 1998 ND 159, ¶¶ 21–22, 583 N.W.2d 626.

The insurers argue there will be numerous individual issues remaining after the common issues have been determined. Our prior cases, however, make it clear class certification need not be refused on that basis alone. Class certification is not automatically precluded by the existence of individual issues which will remain after the common questions of law and fact have been resolved.

*Rose*, at ¶¶ 14–15 (citations omitted).

■■■ [¶ 14] In determining class certification, the trial court must weigh the thirteen factors, and no one factor predominates over the others. *Rose*, 2002 ND 148, ¶ 9, 651 N.W.2d 683; *Klagues*, 2002 ND 59, ¶ 8, 643 N.W.2d 45. Even if Microsoft is correct that the trial court abused its discretion in determining common issues predominate over individual ones and there are no unusual management difficulties under N.D.R.Civ.P. 23(c)(1)(E) and (K), the remedy is not denial of certification as a matter of law. If the trial court has relied on an incorrect analysis of those two factors, the remedy would be a remand to the trial court for proper reconsideration of certification under all thirteen factors. *See Klagues*, at ¶ 22; *Werlinger*, 1999 ND 173, ¶ 56, 598 N.W.2d 820. We analyze Microsoft's arguments within that context.

B

■■■ [¶ 15] Microsoft alleges Howe failed to demonstrate the class can establish the "impact" and "damages" elements of its claims by proof common to all members of the class. Microsoft argues that, without such common proof, individual questions predominate over common questions. The trial court, relying on affidavits of Howe's expert witness, found Howe had set forth a methodology for establishing damages by common proof and concluded that common questions predominated over individual issues.

[¶ 16] The arguments on appeal center on the opinions of Howe's expert, Dr. Keith B. Leffler, a professor of economics at the University of Washington. In affidavits submitted to the trial court, Professor Leffler set out economic theories and methods he believed would establish the "pass-through" of Microsoft's overcharges through the various chains of distribution of Microsoft's operating system software and would quantify the damages incurred by the class members. Microsoft has attacked Leffler's analysis, theories, and methodology, claiming Leffler's economic methodology will not produce an accurate measure of damages and, consequently, that Howe has failed to present economic evidence to establish damages. In essence, Microsoft argues that Leffler's methodology is invalid and that, even if his methodology is valid, Howe failed to present "real world" evidence to support Leffler's assessment of damages.

[¶ 17] The trial court addressed Microsoft's assertions and concluded common issues predominated over individual issues:

[T]he court finds that the common questions of law and fact predominate over individual issues. The common issues of law and fact specified above are significant and affect every potential class member. On the other hand, it is true

that there may be individual issues that affect only certain members. Microsoft contends that its distribution system is complex and that alleged damages to each purchaser would depend upon individual circumstances peculiar to each plaintiff. Plaintiffs contend that the issue of damages can be determined by class-wide proof. Each of the parties has presented affidavits from economists, with each economist reaching the opposite conclusion. The court finds that, although there may be some need to establish sub-classes, the predominating common questions of law and fact are such that class action status is appropriate to promote the fair and efficient adjudication of the controversy.

It should be noted that the court is not resolving the "battle of the experts" at this time. That would not be appropriate. The court is merely stating that there is at least a reasonable basis set forth for the methodology in determining damages by class-wide proof. Whether further proceedings will support the plaintiff's economic suppositions remains to be seen, but a sufficient basis has been laid by the plaintiffs for the finding by the court that certification of the case as a class action is appropriate *at this time.* The court always has the ability to decertify the class, or establish other classes or subclasses. It is not necessary to find that there are no individual issues that may remain, only that the common issues of law and fact predominate. The court so finds.

[¶ 18] Microsoft argues the trial court should have determined the validity of Leffler's analysis and methodology and should have considered whether there was sufficient evidence of the effect of Microsoft's overcharges to support Leffler's theories. Here, Microsoft argues at length about the validity of Leffler's methodology and whether there is evidence in the record to support a finding of "pass through" and damages based upon that methodology. Microsoft's argument goes to the merits of Howe's claims and seeks a determination that there is insufficient evidence to support those claims.

[¶ 19] It is well settled that the trial court must make a determination of class certification without delving into the merits of the case. *Werlinger,* 1999 ND 173, ¶ 18, 598 N.W.2d 820; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The question is whether the requirements for class certification have been met, not whether the plaintiffs will prevail on the merits. *Werlinger,* at ¶ 18; *Eisen,* at 178, 94 S.Ct. 2140. In interpreting the corresponding federal rule, the Supreme Court in *Eisen,* at 177–78, 94 S.Ct. 2140 concluded:

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.... This procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such "[a]s soon as practicable after the commencement of [the] action...."

*See* N.D.R.Civ.P. 23(b)(1) (court shall determine whether to certify as a class action "as soon as practicable after the commencement of a class action"); *see also* 7B Charles Alan Wright et al., *Federal Practice and Procedure* § 1785 (2d ed.1986).

[¶ 20] The Supreme Court in *Eisen,* at 178, 94 S.Ct. 2140 specifically agreed with the rationale of the United States Court of Appeals for the Fifth Circuit in *Miller v. Mackey Int'l, Inc.,* 452 F.2d 424 (5th Cir. 1971). Concluding that the federal district

court had improperly considered the merits of the claim in determining whether to certify a class action, the *Miller* court reasoned:

> This portion of the order indicates to us that in passing on the propriety of the class action the district judge may have considered whether the petition stated a cause of action or whether Miller would succeed on the merits. This was improper. In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.
>
> > The determination whether there is a proper class does not depend on the existence of a cause of action. A suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action.
>
> *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3rd Cir.1970). Rule 23 delineates the scope of inquiry to be exercised by a district judge in passing on a class action motion. Nothing in that Rule indicates the necessity or the propriety of an inquiry into the merits. Indeed, there is absolutely no support in the history of Rule 23 or legal precedent for turning a motion under Rule 23 into a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment by allowing the district judge to evaluate the possible merit of the plaintiff's claims at this stage of the proceedings.

*Miller*, at 427–28 (citations omitted); *see also Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir.1995) (Fed. R.Civ.P. 23 "requires certification as soon as practicable, which will usually be before the case is ripe for summary judgment"); *Westlake v. Abrams*, 565 F.Supp. 1330, 1337 (N.D.Ga.1983) (distinguishing plaintiff's burdens under Rule 23 and Rule 56).

[¶ 21] One leading commentator has also noted that the class action determination usually occurs early in the proceedings, before significant discovery takes place:

> Moreover, the requirement of Rule 23(c)(1) that the court determine by order "as soon as practicable after the commencement of an action brought as a class action" whether it may be so maintained means that a class ruling should and usually does come early in the litigation, often based primarily on the pleadings, and sometimes with some opposing and counter-affidavits involved. Rarely is any significant discovery on class issues required, and even more rarely is there a need for any evidentiary hearing. These problems, associated with the need for a preliminary ruling on the propriety of the class, have been eased by the flexibility and judicial discretion spelled out in Rule 23 itself, which provides that a class ruling "may be conditional, and may be altered or amended before the decision on the merits, . . . an action may be brought or maintained as a class action with respect to particular issues, or . . . a class may be divided into subclasses."
>
> These two factors—the flexibility and discretion inherent in Rule 23, on the one hand, coupled with the necessity for an early class ruling, usually at the pleading stage, on the other hand— mean that traditional burden of proof concepts have limited applicability in the procedural context of class actions.

2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 7.27 (3d ed.1992) (footnote omitted).

[¶ 22] The Supreme Court of California addressed the propriety of considering the merits of the underlying claims at the certification stage in *Linder v. Thrifty Oil Co.*, 23 Cal.4th 429, 97 Cal.Rptr.2d 179, 2

P.3d 27 (Cal.2000). The court considered and agreed with the holdings in *Eisen* and *Miller*, and explained the underlying rationale for its result:

When the substantive theories and claims of a proposed class suit are alleged to be without legal or factual merit, the interests of fairness and efficiency are furthered when the contention is resolved in the context of a formal pleading (demurrer) or motion (judgment on the pleadings, summary judgment, or summary adjudication) that affords proper notice and employs clear standards. Were we to condone merit-based challenges as part and parcel of the certification process, similar procedural protections would be necessary to ensure that an otherwise certifiable class is not unfairly denied the opportunity to proceed on legitimate claims. Substantial discovery also may be required if plaintiffs are expected to make meaningful presentations on the merits. All of that is likely to render the certification process more protracted and cumbersome, even if, as Thrifty suggests, trial courts were prohibited from resolving factual disputes. Such complications hardly seem necessary when procedures already exist for early merit challenges.

Thrifty argues a trial court should have flexibility to consider the likely invalidity of the plaintiff's causes of action because of the substantial economic and administrative burdens that approval of class certification would entail. Thrifty also emphasizes that the denial of certification, unlike the granting of dispositive pretrial motions, does not terminate the substantive right of any party or prospective party to pursue an individual claim.

We are not persuaded by Thrifty's suggestion that the traditional criteria and factors for assessing the propriety of certification are inadequate to screen out nonbeneficial class actions. As *Miller, supra*, 452 F.2d 424, indicated in the context of Rule 23, the traditional requirements are difficult to meet and represent meaningful obstacles to inappropriate class suits.

Thrifty's other point also fails to persuade. While the mere denial of certification does not, as a legal matter, terminate the right of any plaintiff to pursue claims on an individual basis, it is likely to have that net effect when there has been injury of insufficient size to warrant individual action. But even assuming the denial of certification does not end an action, Thrifty's proposal virtually assures that courts would be asked to decide repetitious challenges regarding the legal sufficiency of an action, e.g., at the pleading stage through a demurrer, at the certification stage, and yet again with regard to the plaintiff's individual action. Judicial economy and efficiency would not be served under such an approach.

*Linder*, at 35 (citation and footnote omitted).

[¶ 23] Similarly, courts have concluded it is inappropriate at the certification stage of a class action to resolve battles between the parties' respective experts. For example, in *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 292–93 (2d Cir.1999), *cert. denied*, 529 U.S. 1107, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000), the court reversed a denial of class certification where the district court had considered the relative merits of competing experts' evidence:

The District Court relied on the report of Metro–North's statistical expert, Dr. Evans, to conclude that the Class Plaintiffs' statistics were inadequate because they failed to take into account the fact that various Metro–North positions have materially different rates of disci-

pline and promotion. Though Metro–North's critique of the Class Plaintiffs' evidence may prove fatal at the merits stage, the Class Plaintiffs need not demonstrate at this stage that they will prevail on the merits. Accordingly, this sort of "statistical dueling" is not relevant to the certification determination. *Id.* at 292. Noting that, although "[m]ore detailed statistics might be required to sustain the Plaintiffs' burden of persuasion" at trial, the court concluded the Plaintiffs' expert's report sufficiently established the commonality factor for certification. *Id.* at 293. The court concluded:

> In deciding a certification motion, district courts must not consider or resolve the merits of the claims of the purported class. *See Eisen,* 417 U.S. at 177, 94 S.Ct. 2140, 40 L.Ed.2d 732. Here, the District Court credited Metro–North's expert evidence over that of the Class Plaintiffs. Such a weighing of the evidence is not appropriate at this stage in the litigation. Accordingly, we reverse the denial of class certification and remand the case for further proceedings.

*Caridad,* at 293.

[¶ 24] Relying on *Caridad* in granting class certification, the federal district court in *In re Visa Check/Mastermoney Antitrust Litigation,* 192 F.R.D. 68, 79 (E.D.N.Y.2000), *aff'd,* 280 F.3d 124 (2d Cir. 2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002), noted "a district court is not permitted to indulge 'dueling' between opposing experts at the class certification stage." On appeal, the United States Court of Appeals for the Second Circuit affirmed the class certification, explaining:

> Defendants contend that the district court erroneously relied on Carlton's report in granting plaintiffs' class certification motion because, according to defendants, the district court improperly limited its scrutiny of the report and Carlton's expert opinion "failed to provide a credible basis for class certification." Although a trial court must conduct a "rigorous analysis" to ensure that the prerequisites of Rule 23 have been satisfied before certifying a class, "a motion for class certification is not an occasion for examination of the merits of the case." *Caridad,* 191 F.3d at 291 (internal quotation marks omitted). A district court must ensure that the basis of the expert opinion is not so flawed that it would be inadmissible as a matter of law. However, a district court may not weigh conflicting expert evidence or engage in "statistical dueling" of experts. *Caridad,* 191 F.3d at 292–93. The question for the district court at the class certification stage is whether plaintiffs' expert evidence is sufficient to demonstrate common questions of fact warranting certification of the proposed class, not whether the evidence will ultimately be persuasive.
>
> . . . .
>
> The district court correctly noted that its function at the class certification stage was not to determine whether plaintiffs had stated a cause of action or whether they would prevail on the merits, but rather whether they had shown, based on methodology that was not fatally flawed, that the requirements of Rule 23 were met. As for defendants' claim that plaintiffs' expert evidence failed to provide a reliable basis for class certification, the district court's finding that Carlton's methodology was not fatally flawed, and therefore, was sufficiently reliable for class certification purposes, does not constitute an abuse of its discretion.

*In re Visa Check/MasterMoney Antitrust Litigation,* 280 F.3d 124, 134–35 (2d Cir. 2001), *cert. denied,* —— U.S. ——, 122

S.Ct. 2382, 153 L.Ed.2d 201 (2002) (citations omitted).

[¶ 25] The court specifically noted that the class certification stage of the case is not the appropriate time to engage in a *Daubert* examination of the validity of expert evidence:

We note that a motion to strike expert evidence pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), involves a[n] inquiry distinct from that for evaluating expert evidence in support of a motion for class certification, *see infra* Section III. A., although the parties' substantive arguments in both instances may be similar, as is true in this case. A *Daubert* motion is typically not made until later stages in litigation, such as in association with a motion for summary judgment, motion *in limine,* or at trial, and a district court should not postpone consideration of a motion for class certification for the sake of waiting until a *Daubert* examination is appropriate. *See* Fed.R.Civ.P. 23(c)(1) ("As soon as practicable after commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained.")

*Visa,* 280 F.3d at 132 n. 4.

[¶ 26] Another federal court recently rejected arguments that class certification in an antitrust case was inappropriate because the plaintiffs' expert's methodology was invalid and the expert had merely relied on the substantive allegations in the complaint rather than on actual data. In *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.,*

209 F.R.D. 159 (C.D.Cal.2002), the defendants raised many of the same challenges to the expert's opinion Microsoft raises here, including allegations the expert had not tested his economic methodology, had not studied the actual prices purchasers had paid, had not estimated the price purchasers would have paid absent the alleged antitrust violations, had not used empirical data to evaluate his hypothesis, and had not studied the percentage of costs that had been passed on to customers. *See id.* at 161–62. In granting certification, the court concluded:

It is clear to the Court that a lower *Daubert* standard should be employed at this stage of the proceedings. Courts have declined to engage in a *Daubert* analysis at the class certification stage of an action on the ground that an inquiry into the admissibility of the proposed expert testimony under *Daubert* would be an inappropriate consideration of the merits of the plaintiff's claims.

At this stage in the proceeding, an expert report should not be excluded merely on the basis that it assumes the substantive allegations of the complaint rather than relying upon actual data that may yet to be discovered.

*Thomas,* at 162–63 (citations omitted).

[¶ 27] We agree with the rationale of the foregoing cases. A motion for certification should not be treated as a motion for summary judgment, requiring plaintiffs to present admissible evidence to support each element of their claims. Nor is the certification hearing the appropriate time to engage in a full-blown examination of the validity of an expert's analysis, opinions, and methodology.[1] As long as the

---

1. We have not adopted the standards for admitting expert evidence articulated by the Supreme Court of the United States in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). *See Hamilton v. Oppen,* 2002 ND 185, ¶ 20 n. 2, 653 N.W.2d 678. Admission of expert evidence at trial is governed by N.D.R.Ev. 702,

basis of the expert's opinion is not so blatantly flawed that, on its face, it would be inadmissible as a matter of law, the court may consider the expert's evidence in determining whether to certify the class action.

[¶ 28] The arguments raised by Microsoft are more appropriate for a motion in limine to exclude expert testimony or a motion for summary judgment. Microsoft's arguments go to the merits of the plaintiff's claims and may be more appropriately reviewed at a later stage of this litigation. Rule 23(b)(1), N.D.R.Civ.P., provides that the decision whether to certify a class action should be made "as soon as practicable after the commencement of a class action."

[¶ 29] We have explained that, if further development of the facts warrant, the trial court has the authority to decertify, create subclasses, or modify the class:

Under N.D.R.Civ.P. 23(b), a trial court generally considers issues about certification of a class action "as soon as practicable after the commencement of a class action," and at that stage of the proceeding, issues regarding a joint or common interest may not be fully crystalized. A trial court may amend a certification order at any time before entry of judgment on the merits. N.D.R.Civ.P. 23(e). Under similar language in Fed.R.Civ.P. 23(c)(1), federal trial courts are free to decertify, subclassify, or modify a class certification previously granted. In *Richardson [v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983)], the court aptly explained a federal trial court "must define, redefine, sub-

class, and decertify as appropriate in response to the progression of the case from assertion to facts."

*Rose*, 2002 ND 148, ¶ 18, 651 N.W.2d 683 (quoting *Ritter II*, 2001 ND 56, ¶ 16, 623 N.W.2d 424). The trial court in this case expressly noted it may be necessary to create other classes or subclasses, or even decertify the class, based on future development of the facts.

[¶ 30] We conclude the trial court did not abuse its discretion in determining Howe had, at this stage in the proceedings, set forth an adequate methodology to establish the impact and damage elements of the underlying claims. We further conclude the court did not abuse its discretion in determining that common questions predominated over individual issues and that management of the class would not be unusually difficult.

C

[¶ 31] Microsoft argues we should follow the reasoning in the only appellate decision to date which has addressed the appropriateness of class certification in the numerous identical class actions against Microsoft wending their way through various state courts.[2] In *A & M Supply Co. v. Microsoft Corp.*, 252 Mich.App. 580, 654 N.W.2d 572 (Mich.Ct.App. Aug.27, 2002), the trial court had certified a class action by indirect purchasers against Microsoft, relying upon affidavits by Professor Leffler. The Michigan Court of Appeals, after engaging in a painstaking analysis of Leffler's economic theories and methodologies, determined that the plaintiffs had

---

and the trial court has broad discretion to determine whether the witness is qualified as an expert and whether the evidence will assist the trier of fact. *See Hamilton*, at ¶ 15.

**2.** According to the parties, trial courts in Florida, South Dakota, Kansas, Michigan, Wisconsin, Arizona, Minnesota, California, New Mexico, and Tennessee have granted class certification in indirect purchaser antitrust actions against Microsoft. One trial court, in Maine, has denied certification.

failed to present sufficient data to calculate actual damages using Leffler's proposed methodologies and that Leffler had not provided a viable method for proving damages on a class-wide basis. Microsoft alleges that Leffler's affidavits in the Michigan case are virtually identical to the affidavits submitted by Howe in this case.

[¶ 32] Microsoft urges us to adopt the rationale of the Michigan Court of Appeals, to reject Leffler's economic theories and methodologies, and to reverse the order granting class certification. We decline to do so for several reasons.

[¶ 33] Most significantly, the Michigan court employed a vastly different appellate standard of review than the standard which guides our review of an order granting or denying class certification. In Michigan, the trial court's decision to certify a class action is treated as a finding of fact, and is reviewed on appeal under the clearly erroneous standard. *See A & M,* 252 Mich.App. 580, 654 N.W.2d 572, 2002 WL 1974137, at *4. In this state, the trial court has broad discretion in determining whether to certify a class under N.D.R.Civ.P. 23, and its decision will not be overturned unless the trial court has abused its discretion. *E.g., Rose,* 2002 ND 148, ¶ 5, 651 N.W.2d 683. In order to establish an abuse of discretion, the complaining party must affirmatively establish the trial court acted in an unreasonable, arbitrary, or unconscionable manner, its decision was not the product of a rational mental process leading to a reasoned decision, or it misinterpreted or misapplied the law. *See Rose,* at ¶ 5; *Gepner v. Fujicolor Processing, Inc.,* 2001 ND 207, ¶ 13, 637 N.W.2d 681. In *Rose,* at ¶ 17, we stressed that this is a "highly deferential standard of review," and held:

> By definition, when a matter is left to the broad discretion of the trial court, it is envisioned there is a broad range of

factual scenarios in which the trial court is left to make its choice, and whichever choice it makes will be upheld on appeal. This case presented many close questions and difficult choices, and it was for the trial court to make those choices without interference from this Court on appeal unless there has been an abuse of discretion.

[¶ 34] Perhaps because it was employing a less deferential standard of review, the Michigan court closely examined the facts and merits of the case and engaged in a resolution of the "battle of the experts," which we have concluded is inappropriate at the class certification stage. The court repeatedly pointed to the lack of data to support a calculation of damages using Leffler's methodology, effectively turning the class certification determination into a de facto summary judgment proceeding. This result conflicts with our conclusion that class action plaintiffs are not required to prove their claims or to present admissible evidence on all elements of their claims at the class certification stage of the litigation.

[¶ 35] In noting the lack of evidence or empirical data to support Leffler's theories and methodologies, the Michigan court chastised the plaintiff for seeking certification too early in the litigation:

> Again, the early stage of the proceedings likely did not allow Dr. Leffler sufficient data to perform—or even describe in any great detail—a regression analysis or results. However, the timing of a motion for class action certification within the first ninety-one days after the complaint is filed is entirely a matter that rests in the plaintiff's hands. The decision *when* to move for class certification is tactical, resting in part on the degree to which the lawsuit's economic feasibility depends on whether it proceeds as a class action and the likely

expense of learning, at a later date, that certification is not possible. Nevertheless, these factors do not obviate a plaintiff's burden with respect to articulating a method or formula by which a court could determine that the defendant's conduct caused each member of the proposed class actual damages.

*A & M*, 252 Mich.App. 580, 654 N.W.2d 572, 639–40 (footnote omitted). The Michigan court's analysis directly conflicts with the language of N.D.R.Civ.P. 23(b)(1), which provides that the decision whether to certify a class action shall be made "as soon as practicable after the commencement of [the] action." *See also Eisen*, 417 U.S. at 177–78, 94 S.Ct. 2140 (a procedure allowing inquiry into the merits at the class certification stage "is directly contrary to the command" in Fed.R.Civ.P. 23(c)(1) that the court determine whether to certify "[a]s soon as practicable after the commencement of [the] action").

[¶ 36] We decline Microsoft's invitation to adopt the Michigan court's rationale and result in *A & M*.

IV

[¶ 37] We have reviewed the remaining issues raised by Microsoft and find them to be without merit. We conclude the trial court did not abuse its discretion in certifying the class action. The order certifying the class action is affirmed.

[¶ 38] WILLIAM A. NEUMANN, Acting C.J., and WILLIAM W. McLEES, D.J., LAWRENCE A. LECLERC, D.J., and DALE V. SANDSTROM, JJ., concur.

[¶ 39] The Honorable WILLIAM W. McLEES, D.J., and the Honorable LAWRENCE A. LECLERC, D.J., sitting in place of VANDE WALLE, C.J., and MARING, J., disqualified.