COMMONWEALTH OF PENNSYLVA-
NIA and Raymond Williams, et al.

v.

LOCAL UNION 542, INTERNATIONAL
UNION OF OPERATING
ENGINEERS, et al.

Civ. A. No. 71–2698.

United States District Court,
E. D. Pennsylvania.

June 8, 1981.

Harold J. Goodman, Philadelphia, Pa., for plaintiffs.

Marvin I. Barish, Philadelphia, Pa., John J. McAleese, Jr., Bala Cynwyd, Pa., for defendants.

MEMORANDUM OPINION

BECHTLE, District Judge.

Recently before the Court was the motion of defendant United Engineers & Constructors, Inc., and Bechtel Power Corporation for decertification of the defendant class for Stage II of this litigation. After the submission of a series of legal memoranda in support of and in opposition to that motion, the Court heard oral argument on the motion on March 31, 1981. The Court granted the motion for decertification by the filing of Post Decree Order # 35 dated April 6, 1981. This Memorandum Opinion provides further articulation of the Court's reasoning for granting the motion and sets forth the legal authority upon which that ruling is predicated.

The procedural and factual history of this litigation has been delineated at some length in prior Opinions of this Court and of Judge A. Leon Higginbotham, Jr., the original trial judge in this ongoing litigation.[1] For present purposes, the Court was asked to reexamine by way of motion for decertification the prior certification of a defendant class action in this litigation and whether that certification should be reexamined now that the Stage I liability phase of this case is completed and the Stage II damages (backpay) phase is ready to commence.

As set forth in his Memorandum Opinion of November 30, 1978, 469 F.Supp. 329 (E.D.Pa.1978), aff'd, 648 F.2d 923 (3d Cir. 1981), Judge Higginbotham defined the defendant class as:

> (a) all contractor associations which are, or may be, parties to a collective bargaining agreement with Local 542, International Union of Operating Engineers; and

---

1. See Commonwealth of Pennsylvania and Raymond Williams, et al. v. Local 542, International Union of Operating Engineers, et al., 507 F.Supp. 1146 (E.D.Pa.1980), aff'd, Nos. 80–2073, 2074 (3d Cir., May 19, 1981).

(b) all contractor-employers who are subject to collective bargaining agreements with Local 542, International Union of Operating Engineers, and who, pursuant to such agreements, employ or will employ operating engineers referred to them by defendant Local 542.

469 F.Supp. at 336.

However, in so certifying, Judge Higginbotham was very quick to emphasize:

This decision is not designed to carry with it, however, a presumption of backpay liability specifically against the employers themselves, for questions concerning possible allocation between the intentionally discriminatory union on the one hand and the employers and associations vicariously liable on the other must, by analogy to Title VII, and in the natural order of things, await consideration of the trial court at Stage II. Although the evidence necessary to make this evaluation quite properly has not been presented at Stage I, it has been conceded by plaintiffs at oral argument that among the class of defendant employers there are some whose operating engineer workforces are racially balanced and who might have had no reason to suspect that hiring hall discrimination was occurring or who might have taken steps to avoid discrimination. While these circumstances would not absolve such employers of appropriate injunctive liability for the effects of the hiring hall system, they are factors among other possible factors which may be considered at the damages stage along with the question of allocation. Plaintiffs themselves concede that no liability in backpay should be assessed at this stage inasmuch as that determination may depend on individual issues relating to the culpability *vel non* of particular members of defendants' class. Whether such determination can or cannot take place without decertification of the defendant class is an issue not now ripe for decision.

469 F.Supp. at 413. *See also* 469 F.Supp. at 415 ("As has been stated, the issues of fact and of law are precisely the same for all employers at this liability stage. With respect to the theory of *per se* liability adopted herein there is likewise no individualized defense. It is, to repeat, not now properly considered whether the representation or certification at the liability stage may continue into Stage II.").

The Court perceives that four major issues are presented through the motion for decertification of the defendant class. They are: (1) whether, in general, defendant class actions are appropriate procedural mechanisms under the Federal Rules of Civil Procedure; notably, in light of *in personam* jurisdictional and due process considerations; (2) due to the bifurcated nature of this case, whether Stage II for backpay relief alone can be appropriately maintained under a Rule 23(b)(2) defendant class certification now that the injunctive liability stage of this case has been decided; (3) whether class-wide regression damage formulas, as proposed by the plaintiffs for both plaintiff and defendant classes, are appropriate for Stage II; and, (4) whether the requirements of Rule 23(a) are in the first instance satisfied so as to allow a defendant class to continue to be certified in Stage II for backpay relief.

The Court believes that the final issue is completely dispositive of the instant motion for class decertification. In making that determination, the Court is not expressing as a matter of law any determination as to the first three issues, which admittedly involve complex and novel points of law that to some extent lack substantial precedent or are subject to ongoing judicial controversy. Therefore, the Court does not believe it need thrust itself into the legal foray on those issues at this time.

In that procedural light, the bottom-line issue with which the Court is now faced is whether, for Stage II, a defendant class should continue to be certified, which entails that initially the threshold mandatory

requirements of Rule 23(a) must be satisfied. In this case they cannot.[2]

The support for that finding is premised upon the procedural scenario that has been outlined to the Court by the plaintiffs as to the manner in which Stage II should proceed. The plaintiffs propose a two-step procedure for Stage II relief. First, the plaintiffs propose the initial application, correctly or incorrectly, of class-wide damage regression formulas for both plaintiff and defendant classes. Second, they propose that, during the next phase of Stage II, the approximately 1,400 individual defendant contractor-employers who comprise the defendant class would be: (1) provided with individual notice of the pendency of Stage II proceedings for backpay awards; (2) be entitled, if they so choose, to individual representation by separate counsel; (3) be entitled to partake in whatever discovery methods and procedures permitted; and, (4) ultimately, individually participate, if they so choose, in a series of conceivably 1,400 separate mini-hearings during which each defendant contractor-employer could present those individualized defenses it believes are available to it in order to absolve it of backpay liability to plaintiff class members. Those defenses would be presented in the classic adversary manner by way of legal argument, expert testimony, lay testimony and supporting exhibits.

## I. Application of Federal Rule of Civil Procedure 23(a)

Fed.R.Civ.P. 23(a) provides:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**2.** Once certified, class actions can at any time during the litigation be similarly decertified if it is determined that any of the requirements of Fed.R.Civ.P. 23 previously found are no longer

## (A) Defenses of Representative Party Typical of the Defenses of the Class

In the instant action, clearly the defenses available to Glasgow, Inc., as the defendant class representative, are not typical of the defenses available to the defendant class members. In that regard, the plaintiffs, through counsel, have admitted at oral argument on this motion and in their legal memoranda that certain separate and distinct defenses are available to any or all of the approximately 1,400 defendant contractor-employers. The major defenses at Stage II, as articulated by plaintiffs' counsel, to show that any particular defendant contractor did not discriminate, would be:

(1) A contractor-employer is not a member of the defendant class because it does not fall within the defined class prerequisites outlined in Judge Higginbotham's class certification order. *See* Plaintiffs' Reply Brief in Response to the Memorandum of Petitioners United Engineers & Constructors, Inc., and Bechtel Power Corporation Seeking Decertification of the Defendant Class Prior to Stage II, at 13 ("Reply Brief").

(2) A contractor-employer has employed, during the relevant time period, a statistically significant number of minority operating engineers in its workforce. Hearing on Motion to Decertify Class, March 31, 1981, N.T. 19, 20, 22, 28. The determination as to what would be statistically significant would be made after the presentation of expert testimony by statisticians and exhibits from both parties. N.T. 41.

(3) A contractor-employer, even if found to have had a statistically significant under-representation of minority operating engineers in his workforce during the relevant time period, nevertheless did not discriminate because that under-representation was due to the exercise of a "racially neutral" recall provision in the Local 542 collective bargaining agreement. N.T. 24.

met. *See Link v. Mercedes-Benz of North America, Inc.*, 550 F.2d 860, 864 (3d Cir. 1977) (*en banc*); *Seligson v. The Plum Tree, Inc.*, 61 F.R.D. 343, 344–345 (E.D.Pa.1973).

(4) A contractor-employer had an under-representation of minorities in its workforce because some or all of those minority operating engineers referred by the Local's hiring hall lacked the general or special skills required for the particular job assignment for which they were requested and, therefore, could not be utilized in the contractor-employer's workforce. N.T. 39.

The plaintiffs also acknowledge the availability of four other possible defenses to the 1,400 defendant contractor-employers which admittedly are of more limited application:

(1) The total employee hours reported to the union pension fund, from which the percentage of minority hours is calculated, was inaccurate due to a clerical error. N.T. 32.

(2) The pension fund records of the union are inaccurate because one defendant contractor-employer's reported hours was confused with those of another contractor-employer. N.T. 32.

(3) A contractor-employer had not reported some or all of its employee hours to the union pension fund during the entire or part of the relevant time period. This would necessitate an individual determination from that employer's business records or other sources as to the actual number of hours worked by minority operating engineers during the relevant time periods in that particular contractor-employer's workforce. N.T. 30.

(4) A contractor-employer, during the relevant time period, had an individual affirmative-action-type program by which it actively sought minority referrals but was unable to secure same from the union hiring hall, for whatever reason. N.T. 39–40.

The plaintiff has not asserted that Glasgow, as the class representative, has available to it any or all of the above acknowledged defenses for Stage II. Rather, the plaintiffs contend that the defenses available to each defendant contractor-employer, presumably including Glasgow, may be separate and distinct. See Reply Brief at 9, 13.

(B) *The Class Representative Can Fairly and Adequately Protect the Interests of the Class*

It is apparent, in light of the numerous defenses available to each of the 1,400 individual contractor-employers, after the application of the class-wide damage formulas, that simple mathematics demands that Glasgow cannot fairly and adequately represent the separate defense interests of 1,400 class members by reason of the obvious limited time, financial and legal capabilities of counsel for the class representative. The plaintiffs do not deny that legal conclusion. Rather, they state in their reply brief that:

Once a minority utilization formula has been devised, each employer will be notified of its right to participate in Stage II. At that time the proceedings will be distinctly individual. *No longer will Glasgow or Cunniff, Bray & McAleese be acting as a class representative.* Each will be permitted to prove that it is not or was not a class member; that it employed a statistically significant number of minority operating engineers (e. g., Barger Construction Company); that the employment data introduced against it is incorrect; or that non-discriminatory factors (i. e., factors unrelated to race) rebut the statistical case against it.

Reply Brief at 13 (emphasis supplied).

The Court of Appeals for the Third Circuit has clearly and repeatedly held that, in order to maintain a class action, each and every requirement of Rule 23(a) must be first satisfied before proceeding to a 23(b)(2) or 23(b)(3) determination. The requirements of 23(a) are *mandatory* and not discretionary. *See Scott v. University of Delaware*, 601 F.2d 76, 84 n.14 (3d Cir. 1979); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir. 1974) (*en banc*). Those requirements cannot be boldly thrown aside in order to create hybrid proceedings wherein there would be no class representative but, in effect, one massive joinder of 1,400 individual claims, each to be separately tried. This suggested creation of a headless class action flies directly in

the face of one of the fundamental purposes behind the creation of the class action rule—that being to allow a representative class member to appear through counsel on behalf of the other class members in order to fairly and adequately *represent* the interests of the class in a single forum. This is required in part to achieve economy of time, resources and effort from both a judicial and a litigant perspective. *See Buford v. American Finance Co.*, 333 F.Supp. 1243, 1250 (N.D.Ga.1971). As the Fifth Circuit Court of Appeals stated in the case of *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973):

First, as the 1966 amendments to Rule 23 clearly illustrate, the purpose of a class action is to allow as few as one member of a class to prosecute an action for the benefit of the class if the requirements of 23(a) and (b) are met. This is one reason why the requirement of 23(a)(4) is stringently applied. The purpose of Rule 23 would be subverted by requiring a class member who learns of a pending suit involving a class of which he is a part to monitor that litigation to make certain that his interests are being protected; this is not his responsibility—it is the responsibility of the class representative to protect the interests of all class members.

474 F.2d at 76 (footnote omitted).

Moreover, the mandatory requirement of a class representative to represent the claims of the class members in a single forum is bottomed upon the common sense notion of judicial manageability. The issue of the manageability of a class action has been repeatedly raised as a factor bearing upon the certification or decertification of a class action. Although it has surfaced generally in the context of the predominance and superiority requirement under Rule 23(b)(3), the Court believes the reasoning in that context to be equally applicable when considering the threshold requirements of Rule 23(a).

In *Link v. Mercedes-Benz of North America, Inc., supra* at 860, the court held that a class can be decertified for a proper reason and that "unmanageability would be such a circumstance." *Id.* at 864. The circuit court further stated:

It is obvious that the district court's concern—a justifiable and serious one—is with manageability. This is a practical problem, and primarily a factual one with which a district court generally has a greater familiarity and expertise than does a court of appeals. Consequently, it is an area in which the trial court must of necessity be granted a wide range of discretion. The housekeeping problems involved in notifying an extremely large group of people, reviewing replies, answering inquiries, and processing of claims as well as the effect on other cases on the court's docket, are all matters which can best be evaluated by the man on the scene. These are often difficult judgments and that fact has not been overlooked in the rules.

550 F.2d at 864. *See also* 550 F.2d at 867 (Adams, J., dissenting).

In *Katz v. Carte Blanche Corporation, supra* at 747, the circuit court also stated:

Although the literature and case law under rule 23 often refer to a finding of "manageability" as a separate requirement for a class action determination, it is actually one of the nonexclusive factors which is to be taken into account in making the required findings of predominance and superiority. We have concluded that the order appealed from must be reversed because the superiority finding was in error. With the procedure we have suggested, the class, if any, ultimately to be included and receive notice may be considerably smaller than 800,000. The management problem later in the case may be considerably different than appears at this juncture since at a later stage the content of the notice may be considerably more specific. If [*sic*] suffices to say at this point that determining which of 800,000 claimants was a consumer rather than a businessman, if the defendant chooses, as it may, to insist on proof as to each, appears on the surface to present formidable management problems and will undoubtedly be reconsid-

ered if the district court concludes that Katz has proved all three claimed violations.

496 F.2d at 762–763 (footnote omitted). *See also* 496 F.2d at 768 n.3 (Seitz, C. J., dissenting); 496 F.2d at 776 (Adams, J., dissenting). *See also Nix v. Grand Lodge of Int. Ass'n of Mach. & Aero. Wkrs.*, 479 F.2d 382, 385, 386 (5th Cir. 1973) ("A district court is given broad discretion in controlling class actions because of the managerial difficulties which may develop."); *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43, 57 (D.Del.1974) (Latchum, J.) (there would be no savings of time to the parties or the court if the class were certified, since individualized issues relating to each absent class member "would require a plethora of mini-trials with an overall mammoth case"); *Ralston v. Volkswagenwerk, A.G.*, 61 F.R.D. 427, 433 (W.D.Mo.1973) (in a case involving 18,000 claims, the court stated: "A recognition that each member of the class would have a right to come into court and give evidence raises staggering problems of logistics. Manageability could not be assured, or even predicted.").

To proceed now to Stage II in the procedural manner that plaintiffs suggest without the critical presence of a class representative would raise all of the concerns expressed by the above courts.

Finally, the Court finds support in the recent opinion of the Court of Appeals for the District of Columbia in *U. S. v. Trucking Management, Inc.*, 20 FEP 342 (D.C.Cir. 1979) (Bryant, C. J.). There, in an action procedurally similar to the present case, the injunctive liability portion of the case, as here, had been completed due to a decision of the Supreme Court in *Teamsters v. U. S.*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The circuit court at that point decertified the 23(b)(2) defendant class because it determined that common issues of law and fact were no longer present, as they had been in the liability stage; and, second, it stated that the imposition of several thousand individual defendant evidentiary hearings to determine damages would "entail supervisory functions of a magni-

tude far exceeding the supervisory capacity of this court." 20 FEP at 350. Therefore, the circuit court held that there was "no discernible reason or means to maintain this action as a defendant class action in this district." *Id.*

In the instant case, the Court is equally faced at Stage II with problems of manageability and the presence of individual defense issues of the type not presented during the Stage I liability phase of this litigation.

The plaintiffs raise the case of *Samuel v. University of Pittsburgh*, 538 F.2d 991, 995–997 (3d Cir. 1976), in support of their position to continue the certification of the defendant class for Stage II. That case involved an attack on a statewide residency rule providing that tuition rates for wives was determined by the domicile of her husband. In *Samuel*, the Third Circuit reversed a lower court decision which had decertified a defendant class after a determination of liability because it found that the restitution claims of each member of the plaintiff class presented different factual issues, thereby failing to meet the requirement of Rule 23(a)(2). In reversing, the *Samuel* court held:

> In almost every class action, factual determinations like these pertaining to individual class members must be made. *See, e. g., United States v. United States Steel Corp.*, [520] F.2d 1043 (5th Cir. 1975); *E.E.O.C. v. Detroit Edison Co.*, 515 F.2d 301, 315 (6th Cir. 1975); *Meadows v. Ford Motor Co.*, 510 F.2d 939, 942 (6th Cir. 1975). Still we know of no case where this has prevented a court from aiding the class to obtain its just restitution. Indeed, to decertify a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device.

538 F.2d at 995 (footnote omitted).

However, the *Samuel* court was also quick to note:

> However, we recognize that there may be circumstances where the Court could properly decertify a class. *See, e. g., Katz v. Carte Blanche Corp.*, 496 F.2d 747

(3d Cir. (en banc), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *Nix v. Grand Lodge of Int'l Ass'n of Machinists and Aerospace Workers*, 479 F.2d 382 (5th Cir. 1973), *cert. denied*, 414 U.S. 1024, 94 S.Ct. 449, 38 L.Ed.2d 316 (1973).

538 F.2d at 995 n.4.

The *Samuel* court appears to have based its decision upon four separate factors. First, the court stated that, if the class were decertified prior to a determination of individual damages, it would effectively deter attorneys in the future from bringing such cases since, after finding a violation, no benefit fund would be available to recover attorney fees. *Id.* at 995–996. Here, that consideration is not applicable in light of the existing statutory grants providing for attorney fees in Title VII and § 1981 cases, under which attorney fee motions are currently pending before the Court. Second, the factual issues present in the *Samuel* case to which the damage phase of the case would have been devoted were relatively simple. They concerned whether the plaintiff female student had been a Pennsylvania resident at the time they had paid their nonresident tuition rate; and, second, the amount of restitution due based upon the resident and nonresident tuition schedules. The *Samuel* court admitted that both questions could be "quickly" and "easily" determined. *Id.* at 996. Here, as readily apparent, the admitted available defenses for each of the 1,400 contractor-employers could conceivably involve legal, factual and expert issues which are not "quickly determined."

Third, the *Samuel* court stated that the decertification of the *plaintiff* class would require each student to, in essence, fend for herself because the lower court had "effectively precluded most of the students from recovering funds that the University illegally exacted from them." *Id.* at 996. This was due to the time, trouble and expense each student would entail in pursuing her

individual claim. Here, the Court is not decertifying the *plaintiff* class but, rather, the defendant class. Therefore, the plaintiff class members will not be precluded from seeking backpay relief against the still-named party defendants, even though the Court is decertifying the defendant class.[3]

This Memorandum Opinion is in support of the Court's Post Decree Order # 35 dated April 6, 1981.

---

**3.** The fourth factor the *Samuel* court considered is not clearly applicable to the instant action. *Id.* at 996.