2003 SD 19

**In re SOUTH DAKOTA MICROSOFT ANTITRUST LITIGATION.**

**No. 22306.**

Supreme Court of South Dakota.

Argued Nov. 20, 2002.

Decided Feb. 12, 2003.

Charles B. Casper of Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, PA, David B. Tulchin, Joseph E. Neuhaus, Sullivan & Cromwell, LLP, New York, NY, Gene N. Lebrun of Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, South Dakota Attorneys for appellant Microsoft.

Mark A. Moreno of Schmidt, Schroyer & Moreno, PC, Pierre, South Dakota, Ben Barnow of Barnow & Associates, P.C., Chicago, IL, Leonard B. Simon of Milberg, Weiss, Bershad, Hynes & Lerach, LLP, San Diego, CA, Attorneys for appellees Swanson, Knecht, Schoenfelder, Gengler.

GILBERTSON, Chief Justice.

[¶ 1.] The Sixth Judicial Circuit Court granted class certification in this indirect-purchaser antitrust action to members of a certified class of South Dakota end-users (Class Members). This Court granted a discretionary appeal brought by Microsoft Corporation (Microsoft). We affirm the circuit court's certification order.

## FACTS AND PROCEDURE

[¶ 2.] The Class Members, who are indirect purchasers of Microsoft Windows or MS–DOS operating systems software (OSS), are residents of the State of South Dakota. The Class Members allege that Microsoft has maintained a monopoly in the marketplace since the late 1980's or early 1990's. They contend that this monopoly was established through various anti-competitive acts such as stifling innovation in the market place and overcharging customers. The Class Members claim that Microsoft's actions "eliminated competition in the market for similar OSS, deprived purchasers of the benefits of a free market and injured consumers by forcing them to purchase Microsoft OSS at artificially high and supra-competitive prices in violation of South Dakota antitrust laws."

[¶ 3.] The Class Members sought and after extensive proceedings before the circuit court, obtained certification of a class in the Sixth Judicial Circuit.[1] Microsoft was granted this discretionary appeal, raising the following issue for our review:

Whether the circuit court abused its discretion when it granted class certification in this indirect-purchaser antitrust action.

---

1. The Class Members sought certification of the following class pursuant to SDCL 15–6–23 (Rule 23):

 All persons and entities who acquired for use, and not for further selling, leasing or licensing, a license in South Dakota from Microsoft, an agent of Microsoft, or an entity under Microsoft's control, for an Intel-compatible PC version of MS–DOS, Windows 95, upgrades to higher MS–DOS versions, upgrades to or of Windows 95, Windows 98, upgrades to or of Windows 98, or other software products in which MS–DOS or Windows have been incorporated in full or in part at any time during the class period or after March 21, 1996. Excluded from the class are government entities, Microsoft, its officers, directors, employees, subsidiaries and affiliates and any judges and justices who preside over this case or any portion thereof.

## STANDARD OF REVIEW

[¶ 4.] "On review of an order denying or granting a motion to maintain a class, the lower court may be reversed only for an abuse of discretion." *Trapp v. Madera Pacific, Inc.*, 390 N.W.2d 558, 560–61 (S.D.1986); *see also Swanson v. Sioux Valley Empire Elec. Ass'n Inc.*, 535 N.W.2d 755, 759 n. 2 (S.D.1995).

[¶ 5.] " 'An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.' " *Black v. Class*, 1997 SD 22, ¶ 27, 560 N.W.2d 544. In applying the abuse of discretion standard, " 'we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision.' " *State v. Wilkins*, 536 N.W.2d 97, 99 (S.D.1995) (citations omitted). Under such a standard of review "we must be careful not to substitute our reasoning for that of the trial court." *State v. Larson*, 512 N.W.2d 732, 736 (S.D. 1994).

## ANALYSIS AND DECISION

[¶ 6.] The United States Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 729, 97 S.Ct. 2061, 2066, 52 L.Ed.2d 707 (1977), held that indirect purchaser suits for overcharge damages are barred under federal antitrust law. However, South Dakota, like many other states, has enacted a repealer statute that allows for indirect purchaser lawsuits to be maintained at the state level. Our state's repealer statute, SDCL 37–1–33, provides:

No provision of this chapter may deny any person who is injured directly or *indirectly* in his business or property by a violation of this chapter the right to sue for and obtain any relief afforded under § 37–1–14.3. In any subsequent action arising from the same conduct, the court may take any steps necessary to avoid duplicative recovery against a defendant.

(emphasis added).

[¶ 7.] In order to obtain certification of a class, the plaintiffs must satisfy all the requirements of SDCL 15–6–23 (FRCP 23(a))[2] (hereinafter Rule 23(a)) and at least one of the provisions of SDCL 15–6–23(b) (FRCP 23(b)) (hereinafter Rule 23(b)). *Trapp*, 390 N.W.2d at 560; *Shangreaux v. Westby*, 281 N.W.2d 590, 592–93 (S.D.1979). Microsoft does not dispute that the requirements of Rule 23(a) are met on this appeal;[3] therefore, we will only address the requirements of Rule 23(b). In its entirety, this statute reads:

An action may be maintained as a class action if the prerequisites of § 15–6–23(a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of

---

2. Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class,

(4) the representative parties will fairly and adequately protect the interests of the class, and

(5) the suit is not against this state for the recovery of a tax imposed by chapter 10–39, 10–39A, 10–40, 10–41, 10–43, 10–44, 10–45, 10–46, 10–46A, 10–46B, or 10–52.

3. The Circuit Court nevertheless made an independent review of rule 23(a) and concluded that the plaintiffs satisfied all the requirements of that rule.

the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate permanent injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

[¶ 8.] Plaintiffs assert that questions of law or fact common to all members of the proposed class predominate, including:

a. Whether Microsoft is a monopolist in the market for operating system software;

b. Whether Microsoft engaged in anticompetitive conduct in order to unlawfully maintain its monopoly powers;

c. Whether Microsoft's conduct violated South Dakota's antitrust laws;

d. The impact of Microsoft's activity in the relevant marketplace;

e. Whether Microsoft's conduct caused harm; and

f. Whether Plaintiffs and putative class are entitled to damages and appropriate measure of such damages.

■ According to *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982), a court is required to conduct a rigorous analysis to determine if the elements of Rule 23 have been met.[4] Furthermore, in applying the federal version of Rule 23, the United States Supreme Court has held that a party seeking certification must show "actual, not presumed," conformance with class certification requirements. *Id.* However, any doubts as to whether the class should be granted certification should be resolved in favor of certification. *Bellinder v. Microsoft Corp.*, No. 99–CV–17089, 2001 WL 1397995, at *8 (Kan.Dist.Ct. Sep. 7, 2001) (citing *Arch v. American Tobacco Co.*, 175 F.R.D. 469, 476 (E.D.Pa.1997)).

[¶ 9.] The question we are faced with here is whether this case is suitable for

4. SDCL 2–14–13 mandates that when a South Dakota statute has as its source a uniform law, "it shall be so interpreted and construed as to effectuate its general purposes to make uniform the law of those states which enact it." We have determined the federal rules of civil procedure to be similar to uniform laws. *State v. Wright*, 1999 SD 50, ¶ 13 n. 4, 593 N.W.2d 792, 798 n. 4; *Miller v. Hernandez*, 520 N.W.2d 266, 269 (S.D.1994).

resolution on a class-wide basis. We stated in *Trapp*, 390 N.W.2d at 560:

> Class actions serve an important function in our judicial system. By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation.

[¶ 10.] This is consistent with the last sentence of SDCL 37–1–33 which directs a trial court: "[i]n any subsequent action arising from the same conduct, the court may take any steps necessary to avoid duplicative recovery against a defendant." One method of insuring against this threat is to try all claims in a single proceeding.

[¶ 11.] We are aware that denial of class certification may be the death knell of claims due to the de minimus amounts of each individual claim which may economically preclude attempted redress by plaintiffs in separate law suits. *c.f. Lick v. Dahl*, 285 N.W.2d 594 (S.D.1979). Herein the circuit court held that there were "a very large number of claimants with relatively small amounts at stake. Most consumers have little incentive to file suit independently because the high cost of litigation would far exceed their potential recovery." At oral argument before this Court, Microsoft conceded that should the class not be certified, individual consumers could not in all likelihood, economically pursue separate legal actions against it.

[¶ 12.] Moreover, the Plaintiffs are not required to prove their case on the merits at the class certification stage. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *Bellinder*, 2001 WL 1397995, at *7. They must make a "threshold showing" that the antitrust activity, if proven, had a common impact on the class members. *Bellinder*, 2001 WL 1397995, at *7; *In re Catfish Antitrust Litig.*, 826 F.Supp. 1019, 1041–42 (N.D.Miss.1993). The Plaintiffs must advance a method for determining generalized damages on a class-wide basis. *Bellinder*, 2001 WL 1397995, at *7; *Catfish*, 826 F.Supp. at 1042–43.

[¶ 13.] Microsoft first argues that the trial court abused its discretion because it evaluated Plaintiff's showing under Rule 23(b) under an improper relaxed standard of proof. In so doing, Microsoft seeks to avoid the effect of this deferential standard of review by arguing the circuit court committed an error of law in its improper application of a lower standard of proof. It relies upon our holding in *State v. Vento*, 1999 SD 158 ¶ 5, 604 N.W.2d 468, 469 that "by definition, a decision based on an error of law is an abuse of discretion." [5] Microsoft argues that the circuit court improperly applied a standard of proof of "not so insubstantial or illusory as to amount to no method at all." We agree with Microsoft that such a standard is little better than no standard. It would invite procedural abuses of the legal system never intended for proper use of class actions. While the circuit court did acknowledge that such a standard has been applied by other courts,[6] it did not rest its

---

**5.** As an example, in *Lick* class certification of a group of taxpayers was denied by the circuit court on the basis that sovereign immunity barred a class action against the Defendant County. Had the circuit court granted certification sovereign immunity notwithstanding, this would have been an error of law and thus by definition, an abuse of discretion.

**6.** *Catfish*, 826 F.Supp. at 1042–43, *In Re Potash Litig.*, 159 F.R.D. 682, 697 (D.Minn. 1995); *In re Domestic Air Transportation Antitrust Litigation*, 137 F.R.D. 677, 692 (N.D.Ga.

decision on that standard. Instead it plainly stated in its findings of fact and conclusions of law:

> In applying the federal version of Rule 23, the United States Supreme Court has held that a party seeking certification must show "actual, not presumed," conformance with class certification requirements, and that a reviewing court must conduct a "rigorous analysis" in determining whether the elements of Rule 23 have been met. *See General Telephone Company v. Falcon*, 457 U.S. [at 160–61, 102 S.Ct. at 2372, 72 L.Ed.2d 740]; ... *This Court has applied that standard.*

(emphasis added).

[¶ 14.] Having determined the circuit court identified the proper legal standard, we now proceed to Microsoft's second contention that that circuit court abused its discretion by improperly applying that standard when the court considered the evidence submitted to it on the certification question. Microsoft asserts that under Rule 23(b)(3), the Plaintiffs must demonstrate at the time class certification is sought that the "impact" on each class member can be established by common proof. Rule 23(b)(3) requires that either common questions of law or fact predominate. The circuit court found that "Plaintiffs need not calculate each class member's damages individually. Instead damages can be calculated in the aggregate for the class. A summing of all individual claims is not required." For support, the circuit court points to Coordination Proceedings Special Title (Rule 1550(b)) *Microsoft I–V Cases*, NO. JCCP.NO. 4106 (Cal.Super.Ct., San Francisco Co., Aug. 29, 2000) and *Catfish*, 826 F.Supp. at 1043.

[¶ 15.] Microsoft specifically challenges the proposed methodology Plaintiffs advance to determine damages. Recently in *McKie v. Huntley*, 2000 SD 160, ¶ 20, 620 N.W.2d 599, 604, we set forth the general doctrine of proof of damages by a plaintiff, especially when the claimed difficulty in its determination was purportedly caused by the acts of the defendant who now is complaining about the lack of accuracy of such proof: [7]

> Difficulty in computing damages ought not to be confused with the requirement of proving damages as an essential element for recovery. Once the existence of damage has been shown by a preponderance of the evidence, a claimant must produce only the best evidence available to allow a jury a reasonable basis for calculating the loss. While jurors cannot speculate, they have some leeway in figuring damages. "Any doubt persisting on the certainty of damages should be resolved against the contract break-

1991); *In re Indus. Gas Antitrust Litig.*, 100 F.R.D. 280, 306 (N.D.Ill.1983).

7. This type of analysis has also been adopted by the United States Supreme Court concerning the quantum of proof required for antitrust plaintiffs to recover. In *Truett v. Chrysler Motors*, 451 U.S. 557, 566–67, 101 S.Ct. 1923, 1929, 68 L.Ed.2d 442 (1981), the Court reasoned:

> "Any other rule would enable the wrongdoer to profit by [its] wrongdoing at the expenses of [its] victim. ... Failure to apply it would mean that the more grievous the

wrong done, the less likelihood there would be of a recovery."

Our willingness to accept a degree of uncertainty in these cases rests in part on the difficulty of ascertaining business damages ... The vagaries of the marketplace usually deny us sure knowledge of what [the] plaintiff's situation would have been in the absence of the defendant's antitrust violation. But it does not " 'come with very good grace' " for the wrongdoer to insist upon specific and certain proof of the injury which it has itself inflicted.

(internal citations omitted).

er." "[B]reaching parties may not complain when the task is made difficult by their own acts." All we require, therefore, is a reasonable basis for measuring the loss.

*Id.* (internal citations omitted). From a review of the record which is more fully discussed hereinafter, along with the detailed 86 findings of fact and conclusions of law entered by the circuit court, we are satisfied the circuit court accomplished what it set for itself as an appropriate standard, conducting a "rigorous analysis" of the entire certification question.

[¶ 16.] The term "threshold showing" based upon a "rigorous analysis" is probably not subject to a more specific legal definition than its generic understanding because of the various types of potential evidence that could be submitted to the court in the certification controversy. We are mindful that if the standard is set too low, it invites non-meritorious claims to be filed as class actions, which may force a potential defendant to evaluate the case more on economic costs of defending a class action rather than the case on the merits. On the other hand, should too high a standard be set, potential plaintiffs with valid claims, but limited means, are economically precluded from redress to the courts because they cannot each financially maintain individual actions. *See*

*Lick,* 285 N.W.2d 594. SDCL 15–6–1 is a guide to 15–6–23 certification questions. It states in part that our civil procedure code is to "be construed to secure the just, speedy and inexpensive determination of every action."

[¶ 17.] In the case now before us, the evidence appears to be limited to a battle of experts. In such instances, the circuit court may be assisted by borrowing concepts from the standard which this Court routinely uses for determining the admissibility of purported expert evidence; that being the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This is not to suggest that the certification issue be combined with a full blown *Daubert* hearing, but rather has been described as a "lower *Daubert* standard." *Howe v. Microsoft Corp.,* 2003 ND 12 ¶ 26, 656 N.W.2d 285 (citing *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.,* 209 F.R.D. 159, 162–3 (C.D.Cal.2002)).[8] Under *Daubert,* the circuit court's rigorous certification analysis may be guided by whether "an expert's testimony rests on both 'a reliable foundation and is relevant to the task at hand.'" *Rogen v. Monson,* 2000 SD 51, ¶ 13, 609 N.W.2d 456, 459 (citing *State v. Hofer,* 512 N.W.2d 482, 484 (S.D.1994)).

---

8. The actual *Daubert* hearing with full evidentiary and legal arguments comes later in the judicial proceeding than the class certification issue. However, the two may still be connected as a *Daubert* hearing may convince the circuit court that its initial certification of the class can no longer be justified, thus resulting in a decertification of the class.

Under NDRCiv P 23(b), a trial court generally considers issues about certification of a class action "as soon as practicable after the commencement of a class action," and at that stage of the proceeding, issues regarding a joint or common interest may not be fully crystallized. A trial court may

amend a certification order at any time before entry of judgment on the merits. NDRCivP 23(3). Under similar language in FedR CivP 23(c)(1), federal trial courts are free to decertify, subclassify, or modify a class certification previously granted. *In Richardson v. Byrd,* 709 F.2d 1016, 1019 (5thCir.1983), the court aptly explained a federal trial court "must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts."

*Howe,* 2003 ND 12, ¶ 29, 656 N.W.2d 285 (citing *Rose v. United Equitable Ins. Co.,* 2002 ND 148, ¶ 18, 651 N.W.2d 683).

In *Daubert* ... the United States Supreme Court held that before expert scientific testimony may be received, it must be shown that: (1) it has been tested; (2) it has been subjected to peer review and publication; (3) the known or potential rate of error must be known; and (4) to what extent it has received general acceptance. The *Daubert* Court explained:

> The adjective "scientific" implies a grounding in the methods and procedures of science. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation. The term "applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds." *Webster's Third New International Dictionary* 1252 (1986). Of course, it would be unreasonable to conclude that the subject of scientific testimony must be "known" to a certainty; arguably, there are no certainties in science.

*Kuper v. Lincoln–Union Elec.*, 1996 SD 145, ¶ 39, 557 N.W.2d 748, 759–60 (citing *Daubert*, 509 U.S. at 590, 113 S.Ct. at 2795, 125 L.Ed.2d at 481). Admission of expert witnesses is also governed by an abuse of discretion standard. *State v. Guthrie*, 2001 SD 61, ¶ 30, 627 N.W.2d 401, 414–15.

[¶ 18.] The Class Members allege that they were harmed because Microsoft's antitrust violations forced direct purchasers to pay non-competitive prices for Microsoft OSS, and that a portion of the overcharged amount was passed on to them as indirect purchasers. As proof of the impact, Plaintiffs intend to use common evidence and economic methodologies.

[¶ 19.] In seeking certification as a class, the Class Members presented an affidavit by Dr. Leffler, an Associate Professor of Economics at the University of Washington.[9] He presented three theories in which to show that Microsoft harmed the class by monopolistic conduct. Dr. Leffler opined in his affidavit that "the monopolization activity and overcharges at issue here substantially predate the class period. As a consequence, any Microsoft overcharge would have been embedded in the prices at all levels of distribution at the beginning of the class period." The Class Members argue, therefore, that Dr. Leffler's testimony "plainly establishes that the fact of injury can be shown with some certainty."

[¶ 20.] Moreover, the Class Members assert that the amount of antitrust injury can be calculated using "standard, yardstick methodologies." Dr. Leffler proposes that this can be determined by measuring the difference between the price a South Dakota end-user paid for Microsoft's OSS and the price the user would have paid in the absence of Microsoft's alleged illegal conduct. Three methods are offered.

[¶ 21.] The first method is the "comparative margin method." This method compares the prices of Microsoft OSS with the prices of products from a comparable market not affected by anticompetitive activity. The second method is termed the "competitive margin method" in which the margins earned by sellers in a comparable market free from antitrust violations are

---

**9.** Dr. Leffler's specialty is antitrust economics including the study of monopolies and the impact of monopolies on consumers. In addition to teaching classes and conducting research for over 25 years in industrial organizations and antitrust economics, he has preformed complex economic analysis in antitrust cases for many years. Dr. Leffler has been qualified as an expert in proceedings before both federal and state courts. He has assisted the Federal Trade Commission and the Justice Department in their investigation of Microsoft's activities in the early 1980's and 1990's.

compared to the margins earned by sellers in the anticompetitive market. The third method is the "violation-free-period method." This method compares the price of Microsoft's OSS being charged during the anticompetitive time period with the price of OSS being charged during the period free of anticompetitive conduct.

[¶ 22.] In addition to Dr. Leffler's expert testimony, the Class Members submitted several published works from other economists. These works were based on the economists' empirical studies and analyses showing how Microsoft's alleged illegal activities have affected consumers.

 [¶ 23.] In order to be granted class certification, the Class Members must also show that damages can be calculated on a class-wide basis. *Bellinder,* 2001 WL 1397995, at *7. Again, the Class Members use the testimony of Dr. Leffler. He opines that "the amount of Microsoft's overcharge can be estimated using a class-wide statistical determination of the relationship between costs faced by Microsoft's customers and the prices paid by end-users." Dr. Leffler proposes to calculate this amount by statistical estimation, using data available from public sources and third-party discovery.

 [¶ 24.] As the circuit court correctly concluded, this judicial inquiry does not involve a determination as to the likely success of the Class Members' proposed methods. However, the Class Members must present at least one viable method for computing damages on a class-wide basis, one which a reasonable factfinder could accept. *Microsoft I–V Cases,* slip op. at 17–18; *Gordon v. Microsoft Corp.,* 2001 WL 366432, at *11–12 (Minn.Dist.Ct. Mar. 30, 2001).

[¶ 25.] Microsoft puts forth numerous arguments refuting Dr. Leffler's opinions. For example, one such expert, Dr. Hausman, submitted affidavits and provided testimony for Microsoft.[10] The essence of Microsoft's argument is that there are a multitude of complexities and variances in the marketplace and distribution chain that will affect the Class Members' ability to analyze whether, and the extent to which, overcharges were passed on to consumers. Additionally, Microsoft claims that the Class Members have failed to make a "threshold showing" of impact because of problems relating to the nature and extent of the overcharges being passed-on to consumers.

 [¶ 26.] We find that the circuit court did not abuse its discretion when it did not completely accept Microsoft's arguments at this stage of the proceedings. The disagreement on impact and damages should be adjudicated at trial by the factfinder, not by a court on a motion for class certification. Avoiding a "battle of the experts" at the class certification stage is consistent with Supreme Court authority. *See Eisen,* 417 U.S. at 178, 94 S.Ct. at 2153 (concluding that on a motion for class certification, the determination is whether the Plaintiffs have satisfied the requirements of Rule 23, not whether they will prevail on the merits). The court in *Microsoft I–V Cases* stated:

> The question at this stage is not whether plaintiffs will be able to carry their bur-

10. Dr. Hausman is the MacDonald Professor of Economics at the Massachusetts Institute of Technology. His academic and research specialties are econometrics (the use of statistical models and techniques on economic data) and microeconomics (the study of consumer behavior and behavior of firms). He has substantial experience in computer programming. He has testified in nine antitrust trials in the United States and has given seminars to the American Bar Association, the Justice Department and the Federal Trade Commission on topics in anti-trust economics.

den of proving that their experts' analyses are reliable, but whether it appears that the differences between the experts can be intelligently presented and evaluated within the framework of the class action. On a motion for class certification, it is inappropriate to resolve a battle of the experts. Whether or not [plaintiffs' experts] is correct in his assessment of common/impact injury is for the trier of fact to decide at the proper time.

Slip op. at 15. (internal quotations and citations omitted).

[¶ 27.] At oral argument, Microsoft relied heavily upon the recent case of *A & M Supply v. Microsoft Corp.*, 252 Mich.App. 580, 654 N.W.2d 572 (2002). Therein the Court reversed a previous class certification by a trial court. We do not find *A & M* persuasive. Initially, Michigan applies a "clear error" standard of appellate review while South Dakota uses the "abuse of discretion" standard that grants a trial court more appellate deference. *A & M*, 252 Mich.App. at 588, 654 N.W.2d at 577. An abuse of discretion occurs only where "a judicial mind, in view of the law and circumstances, could [not] have reasonably reached the same conclusion." *State v. Barber*, 1996 SD 96, ¶ 14, 552 N.W.2d 817, 820 (citations omitted). " 'Abuse of discretion is the most deferential standard of review available with the exception of no review at all.' " *Guthrie*, 2001 SD 61, ¶ 89, 627 N.W.2d at 431 (Gilbertson, J., concurring in result) (citing *State v. Chamley*, 1997 SD 107 ¶ 51, 568 N.W.2d 607, 620) (Gilbertson, J., dissenting) (citing Martha S. Davis, *Basic Guide to Standards of Judicial Review*, 33 SD Law Rev, 468, 480 (1988)).

[¶ 28.] The *A & M* Court proceeded to review what it determined to be the "battle of the experts." It was once again Dr. Leffler for the plaintiffs and Dr. Hausman for Microsoft. The *A & M* court reversed certification after a very extensive examination of each expert's methodology. *A & M Supply*, 252 Mich.App. at 584, 654 N.W.2d at 575. It concluded Leffler's theories insufficient to support certification, as they were "slogans, not methods of proof." *A & M Supply*, 252 Mich.App. at 638–39, 654 N.W.2d at 602. Beyond the differing standards of appellate review between our two courts, it further appears from our analysis that under South Dakota case law, the *A & M* court would have entered into an examination of the case on the evidentiary merits rather than the threshold issue of class certification. There appears to be little left to ultimately try in front of a jury after it settled the "Battle of the Experts" at the certification stage.

[¶ 29.] In South Dakota the admissibility question awaits a *Daubert* hearing. Thereafter, other procedural devices such as a motion for summary judgment may be invoked. Assuming the "Battle of the Experts" raises questions of fact which are not settled by these pretrial proceedings, such matters are best left for a jury determination with the experts subject to cross-examination in front of a jury rather than reliance upon numerous salvos of pre-trial affidavits by opposing experts in a certification hearing.

When opposing experts give contradictory opinions on the reliability or validity of a conclusion, the issue of reliability becomes a question for the jury. *See State v. Hofer*, 512 N.W.2d 482, 484 (S.D.1994). The trial process is well equipped to deal with contradictory opinions. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert* 509 U.S. at 596, 113

S.Ct. at 2798, 125 L.Ed.2d at 484 (citations omitted).

*Guthrie,* 2001 SD 61, ¶ 38, 627 N.W.2d at 417.

■■■■■ [¶ 30.] Microsoft cites us to authority from other jurisdictions, which it interprets to conclude that a mere clash between "experts" is not enough by itself to support class certification. That is correct to a point. Production of a self-professed expert is simply not enough to meet the certification requirements under our rigorous analysis standard.[11] However, this Court has consistently refused to extend any gate-keeping function to usurp the factual determination role of the ultimate trier of fact. ·

> We begin analysis of this issue from the long-accepted premise that the purpose of expert testimony is to assist the jury as the trier of fact and not to supplant it. This state is not a trial-by-expert jurisdiction. The value of the opinion of an expert witness is no better than the facts upon which it is based. It cannot rise above its foundation and proves nothing if its factual basis is not true. It may prove little if only partially true. The credibility of witnesses and the evidentiary value of their testimony falls solely within the province of the jury.

*Lien v. Class,* 1998 SD 7, ¶ 23, n. 12, 574 N.W.2d 601, 610 (citing *Bridge v. Karl's Inc.,* 538 N.W.2d 521, 525 (S.D.1995)).[12]

[¶ 31.] Our decision here is in line with other jurisdictions that have faced the same certification issue. Every state, with the exception of Maine and Michigan,[13]

that has a repealer statute has granted class certification to indirect purchasers seeking redress against Microsoft for antitrust violations. The very same passthrough and overcharge arguments that Microsoft makes here, have been rejected by a large majority of courts considering the issue. *In re New Mexico Indirect Purchaser Microsoft Corp. Antitrust Litig.,* No. D–0101–CV–2000–1697 (N.M.Dist. Ct., Santa Fe Co., Sept. 30, 2002); *In re Florida Antitrust Litig.,* No. 99–27340 CA 11, 2002 WL 31423620 (Fla.Cir.Ct., Dade Co., Aug. 26, 2002); *Howe,* 2003 ND 12, 656 N.W.2d 285; *Bellinder,* 2001 WL 1397995; *Capp v. Microsoft Corp.,* No. 00–CV–0637 (Wis.Cir.Ct., Dane Co., June 28, 2001); *Friedman v. Microsoft Corp.,* CV–2000–000722 (Consol.) (Ariz.Super.Ct., Maricopa Co., Nov. 15, 2000 & July 13, 2001); *Gordon v. Microsoft Corp.,* No. 00–5994, 2001 WL 366432 (Minn.Dist.Ct., Mar.30, 2001), *aff'd,* 645 N.W.2d 393 (Minn.2002); *Microsoft I–V Cases, supra.*

[¶ 32.] For the foregoing reasons, we find that the trial court did not abuse its discretion in granting class certification to the Class Members. We find that the Class Members have met their "threshold showing" of harm to end-users/consumers. Its decision in certifying this case as a class action is sufficiently supported by the evidence and applicable law and satisfies all of the requirements of Rule 23.

[¶ 33.] We remand to the circuit court for further proceedings consistent with this opinion.

---

**11.** In so doing, we respectfully decline to adopt the standard adopted by the Court in *Howe,* that being: "[a]s long as the basis of the expert's opinion is not so blatantly flawed that, on its face, it would be inadmissible as a matter of law ..." 2003 ND 12, ¶ 27.

**12.** The obvious exception to this would be where the evidence is undisputed such as

occurred in *Lick.* In such instances all that is left for the circuit court to do is correctly apply the law to those undisputed facts.

**13.** *See Melnick v. Microsoft Corp.,* Nos. CV 99–709–752, 2001 WL 1012261 (Me. Super.Ct., Aug. 24, 2001) and *A & M Supply Co.*

[¶ 34.] MEIERHENRY, Justice, and TUCKER, Circuit Judge, concur.

[¶ 35.] KONENKAMP, Justice, and AMUNDSON, Retired Justice, concurs with a writing.

[¶ 36.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, was appointed as a Circuit Judge to sit for SABERS, Justice, disqualified.

[¶ 37.] TUCKER, Circuit Judge, sitting for ZINTER, Justice, disqualified.

KONENKAMP, Justice (concurring).

[¶ 38.] I concur in this decision, but with reservations. I express these reservations in view of the prospect that we may be reviewing this case again before any final resolution. At some point, the plaintiffs' expert, Professor Leffler, must verify his untested economic theories, just as all scientists must establish the reliability of their methods. By his own admission, Dr. Leffler offers only a prediction, a hypothesis that given enough time and data, he can adequately calculate damages for the class members. In an indirect purchaser action, the plaintiffs must prove the actual damages to each class member. *See generally* SDCL 37–1–33. To date, the Professor's theories have not proven effective in accomplishing this task.

### A. Daubert Standards and Class Certification

[¶ 39.] While my concerns with the plaintiffs' theories on damages are not so serious as to discommend class certification, the question remains whether those theories will survive the *Daubert* hearing. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469(1993); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). This Court's opinion acknowledges that the full

*Daubert* criteria have yet to be applied here. These standards cannot be satisfied by simply establishing the threshold tests for achieving class action status. Each expert's theories must pass the rigors of scientific methodology.

[¶ 40.] Though the substantive arguments may be similar, evaluating expert evidence in accord with *Daubert* entails an inquiry "distinct from" the appraisal of expert evidence in support of a motion for class certification. *In re Visa Check/MasterMoney Antitrust Litigation,* 280 F.3d 124, 132 n. 4 (2d Cir.2001). Trial courts should not "postpone consideration of a motion for class certification for the sake of waiting until a *Daubert* examination is appropriate." *Id.; see* SDCL 15–6–23(c)(1) ("As soon as practicable after commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained."). In applying discretion to grant or deny a motion for class certification, the court's inquiry "is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974).

[¶ 41.] On the other hand, SDCL 19–15–2 (Rule 702) governs the admissibility of expert testimony. The test for admissibility, the *Daubert* standard, was adopted in South Dakota in *State v. Hofer,* 512 N.W.2d 482, 484 (S.D.1994). *See also Estate of Dokken,* 2000 SD 9, ¶ 51, 604 N.W.2d 487, 500 (Amundson, J., concurring specially) (explaining that *Kumho* expands the *Daubert* gate-keeping function). To abide by *Daubert–Kumho,* the proponent offering expert testimony must show that the expert's theory or method qualifies as scientific, technical, or specialized knowledge under SDCL 19–15–2 (Rule

702). *State v. Guthrie*, 2001 SD 61, ¶ 34, 627 N.W.2d 401, 415–16. This burden is met by establishing that there has been adequate empirical proof of the validity of the theory or method. Edward J. Imwinkelried, Evidentiary Foundations 287 (4th ed. 1998). Under this standard, a court considers admissibility based on technical methodology, not the scientific correctness of an opinion because "[i]t is not the trial court's role to decide whether an expert's opinion is correct." *See Smith v. Ford Motor Co.*, 215 F.3d 713 (7th Cir.2000). In deciding whether to admit expert testimony, a court must ensure that the opinion rests on a reliable foundation. *Daubert*, 509 U.S. at 597, 113 S.Ct. at 2799, 125 L.Ed.2d at 485. The standards set forth in *Daubert* are not limited to what has traditionally been perceived as scientific evidence. These standards must be satisfied whenever scientific, technical, or other specialized knowledge is offered. *Kumho*, 526 U.S. at 141, 119 S.Ct. at 1171, 143 L.Ed.2d at 246.

[¶ 42.] When "[f]aced with a proffer of expert [testimony on scientific, technical, or other specialized knowledge]," the trial judge must determine at a preliminary hearing "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592, 113 S.Ct. at 2796, 125 L.Ed.2d at 482. *See also* SDCL 19–9–7 (Rule 104(a)) (preliminary questions determined by court). Thus the trial court, not the jury, must make a preliminary assessment whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be applied to the facts in issue. *Id.* That has yet to be established here.

[¶ 43.] In the *Daubert* hearing, the trial judge may consider the following nonexclu-sive guidelines for assessing an expert's methodology: (1) whether the method is testable or falsifiable; (2) whether the method was subjected to peer review; (3) the known or potential error rate; (4) whether standards exist to control procedures for the method; (5) whether the method is generally accepted; (6) the relationship of the technique to methods that have been established as reliable; (7) the qualifications of the expert; and (8) the non-judicial uses to which the method has been put. *See Guthrie*, 2001 SD 61 at ¶ 35, 627 N.W.2d at 416 (citations omitted). *Daubert's* list of factors may not each apply to all experts in every case. *Rogen v. Monson*, 2000 SD 51, ¶ 28, 609 N.W.2d 456, 462–63 (Konenkamp, J. concurring) (citing *Kumho*, 526 U.S. at 141, 119 S.Ct. at 1171, 143 L.Ed.2d 238). With these and perhaps other relevant considerations, a judge must ensure that the testifying experts provide a proven scientific basis for a jury to find with reasonable scientific, technical, or, as here, econometric probability that it is more likely than not that defendant's conduct proximately caused the claimed loss to each class member.

### B. Decertification

[¶ 44.] Considering the provisional nature of the plaintiffs' expert opinions, a *Daubert* hearing could result in decertification. The Supreme Court labels class actions a "nontraditional" type of litigation. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 402 100 S.Ct. 1202, 1212, 63 L.Ed.2d 479 (1980). The action has requirements peculiar to its nature. To secure class certification, the plaintiffs must satisfy all the requirements in SDCL 15–6–23(a) and at least one of the criteria set out in SDCL 15–6–23(b). *Eisen*, 417 U.S. at 163, 94 S.Ct. 2140. Here, the circuit court found that the plaintiffs satisfied all the requirements of § 15–6–23(a) and one requirement of § 15–6–23(b), namely, sub-

section (3). SDCL 15–6–23(b)(3) provides in part that an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

* * *

(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In my view, the plaintiffs maintain a thin hold under this provision.

[¶ 45.] To meet the predominance requirement of SDCL 15–6–23(b)(3), the plaintiffs must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *Rutstein v. Avis Rent–A–Car Sys., Inc.,* 211 F.3d 1228, 1233 (11thCir.2000) (internal quotation marks omitted). As the Michigan Court of Appeals points out in a parallel case, "Dr. Leffler's methodologies, even if they were to work with respect to small, well-defined subclasses that group class members by a very few strongly unifying characteristics, will essentially require separate trials to determine the different pass-on rates affecting the class as a whole." *A & M Supply Co. v. Microsoft Corporation,* 252 Mich.App. 580, 654 N.W.2d 572, 603 (2002).

[¶ 46.] Despite this conclusion in A & M, I agree with the Court that this case should not guide our decision on class certification because Michigan has a different standard of review at the motion to certify stage. However, a reason justifying decertification here may be that the requirements of SDCL 15–6–23(b)(3) are no longer satisfied. *Commonwealth of Pennsylvania v. Local Union 542, Int'l Union*

*of Operating Eng'rs,* 90 F.R.D. 589, 593 (E.D.Pa.1981); Edward F. Sherman, *Aggregate Disposition of Related Cases: the Policy Issues,* 10 Rev. Litig. 231, 272 (1991). The Daubert hearing may reveal that Professor Leffler's theories cannot achieve a practical answer to satisfy the plaintiffs' burden of proof on damages.

[¶ 47.] Under SDCL 15–6–23(c)(1), a court may alter or amend a decision on class certification "before the decision on the merits." Indeed, a court is obligated to monitor class certification and correct the decision as needed in light of evidentiary developments. *Richardson v. Byrd,* 709 F.2d 1016, 1019 (5th Cir.1983); *Reynolds v. Sheet Metal Workers,* Local 102, 702 F.2d 221, 225–26 (D.C.Cir.1981); *Link v. Mercedes–Benz of N. Am., Inc.,* 550 F.2d 860, 864 (3d Cir.1977); *Reed v. Town of Babylon,* 914 F.Supp. 843, 848–49 (E.D.N.Y.1996).

[¶ 48.] Professor Leffler's economic theories have not reached methodological maturity. It remains to be seen whether they will. His "aggregate" damages proposal fails to meet the requirement that each individual member of the class in an indirect purchaser action was injured by the defendant's alleged conduct. *Alabama v. Blue Bird Body Co.,* 573 F.2d 309, 316–17 (5thCir.1978). Both the Court and the plaintiffs cite *McKie v. Huntley,* 2000 SD 160, 620 N.W.2d 599, to permit proof of "aggregate" damages. But that case was not a class action. To allow aggregate damages here means that some members of the class who suffered no loss may be unjustly enriched while others may be under compensated. The Professor's theories must accommodate the requirement that damages be shown for each class member.

[¶ 49.] In certifying this class action, the circuit judge gave Dr. Leffler an op-

portunity to prove that his theories are workable. If he fails, decertification should follow.

[¶ 50.] AMUNDSON, Retired Justice, joins this special writing.

Sabers, J., dissented and filed opinion in which Amundson, Retired Justice, joined.

Amundson, Retired Justice, filed dissenting opinion.